[No. 36118.   Department Two.   September 13, 1962.]

THE STATE OF WASHINGTON, *on the Relation of Robert W. Carriger, Appellant,* v. CAMPBELL FOOD MARKETS, INC., *et al., Respondents.*\*

\*Reported in 374 P. (2d) 435.

George C. Butler (*Critchlow & Williams*, of counsel), for appellant.

*Leavy & Taber*, by *James Leavy*, for respondents.

OTT, J.—March 28, 1955, K. T. Campbell, Fred G. Campbell, and Robert W. Carriger incorporated Campbell Food Markets, Inc. The following bylaw of the corporation granted an option to each of the three incorporators to purchase at par 10,000 shares of its stock on or before March 28, 1960:

" 'Thirty thousand (30,000) shares of the common stock of the corporation shall be held in the treasury of the corporation for a period of five (5) years from the date of the organization of the corporation and shall not be available to sale to anyone other than the three original stockholders of the corporation and each of said original stockholders shall have the right to purchase not to exceed ten thousand (10,000) shares of such block of stock at par during said five (5) year period. Said stock shall be available for sale within said five (5) year period only in the event all of the original stockholders of the corporation waive the provisions of this section.' "

March 21, 1960, R. W. Carriger, in the timely exercise of his option, tendered a cashier's check in the sum of $50,000 to the corporation for 10,000 shares of stock. The corporation returned his check and refused to issue the stock.

In the fall of 1959, K. T. Campbell, as president of the corporation and a member of the board of directors, undertook to negotiate a sale of the corporation's outstanding 167,027 shares of stock to Arden Farms Company. The transfer was to be effected by a voluntary agreement with

each Campbell stockholder to trade his stock for stock in Arden Farms Company, in accordance with an agreed formula.

Campbell Food Markets, Inc., will be hereinafter referred to as Campbell, Arden Farms Company as Arden, and R. W. Carriger as Carriger.

December 11, 1959, K. T. Campbell contacted Carriger by telephone and advised him of the proposed agreement with Arden. December 24, 1959, he forwarded to Carriger, who was the owner of 30,278 shares of stock and a director of Campbell, the proposed agreement with Arden. It was received by Carriger, in Florida, on December 26th, and, upon that date, Carriger sent the following telegram to K. T. Campbell:

"WILL FORWARD VIA AIR MAIL MY STOCK CERTIFICATES AND AGREEMENT TO TRANSFER SAME TO ARDEN FARMS COMPANY TO JAMES RIGHTMIRE MANAGER RICHLAND BRANCH NATIONAL BANK OF COMMERCE ON MONDAY DECEMBER 28TH THE BANK SHOULD RECEIVE THESE ON THE 29TH OR 30TH."

Carriger sent to his escrow holder an agreement which contained a counteroffer for the transfer of his stock to Arden. The proposed Campbell-Arden agreement was not accepted by Carriger, and his counteroffer, which expired January 8, 1960, was not accepted by Campbell and Arden.

January 6, 1960, the Campbell-Arden agreement was signed by Arden and all of the Campbell stockholders, except Carriger and Morris F. Moxley, who owned 200 shares.

January 28, 1960, Carriger deposited 28,278 shares of his stock with the Seattle-First National Bank and offered to exchange for Arden stock on the basis of the formula in the Campbell-Arden agreement. Arden subsequently accepted his offer and issued its stock in exchange. Carriger retained 2,000 shares of Campbell stock and did not resign his directorship.

June 1, 1960, Campbell held its annual meeting of stockholders at the office of the company. Carriger was represented by proxy, and contended that he was entitled to vote

10,000 additional shares of stock for the reason that he had timely exercised his option. The chairman ruled that, since the additional stock had not been issued, he was not entitled to vote it. Carriger then moved that the stockholders proceed to secure evaluation of their shares of stock in order that the minority stockholders could receive payment therefor, prior to the transfer of the assets of the corporation to Arden. The chairman ruled that the motion was out of order. The stockholders then elected the board of directors for Campbell. Carriger was not re-elected.

Carriger commenced this action against Campbell, Arden, and K. T. Campbell (1) for specific performance of the option agreement, and (2) for evaluation of Campbell's stock, contending that the transfer constituted a merger of the two corporations and that, as a minority stockholder, he was entitled to the cash value of his stock, as provided by the Uniform Business Corporation Act.

The cause was tried to the court upon agreed facts substantially as above indicated. The court denied relief to Carriger and dismissed his claims of action. From the judgment of dismissal, Carriger has appealed.

Carriger first assigns error to the court's denial of specific performance of the option agreement. The agreement was an obligation of Campbell, and included in the bylaws of the corporation. Carriger tendered a cashier's check in the sum of $50,000 and timely exercised the option. He did not sign the Campbell-Arden agreement because, in his opinion, it eliminated his right to exercise the stock option.

Respondents contend that specific performance does not lie for the reason that it is an equitable remedy and to compel specific performance, under the facts of this case, would be inequitable.

The trial court, in holding that Carriger's conduct was inequitable, found as follows:

"That plaintiff from December 11, 1959 until after January 28, 1960, at which time he exchanged his 28,278 shares, never mentioned to the remaining stockholders,

including the remaining majority stockholders, K. T. Campbell and Fred G. Campbell, the matter of the stock option; . . ."

■ This finding indicates that it was Carriger's duty to inform Campbell stockholders that his option privilege was still outstanding and that he intended to exercise it. At the time the corporation was established, the right to exercise the option within the five-year period vested in Carriger as an incorporator, subject only to his timely payment of $50,000 for 10,000 shares of stock. Campbell and its stockholders are charged with knowledge of the contents of the corporation's bylaws. In this regard, such knowledge is evidenced by the provisions of the Campbell-Arden agreement. The bylaws did not require that Carriger inform the corporation of his intention to exercise his option; hence, he had no duty to do so.

■ The court further found that, by transferring 28,278 shares on January 28, 1960, Carriger ratified the Campbell-Arden agreement. This finding is not supported by the record. The Campbell-Arden agreement provided that the directors must resign and the incorporators waive their option for additional stock. Carriger refused to sign the agreement because he would not waive his option privilege. When Carriger offered to dispose of 28,278 shares of his stock upon the formula expressed in the Campbell-Arden agreement, Arden was under no obligation to accept the stock upon his terms. The exchange authorized by Arden was an acceptance of Carriger's Campbell stock upon the terms of his offer. His offer did not require him to transfer to Arden his entire block of stock or to resign as director or to forfeit his option privilege; therefore, these salient features of the Campbell-Arden agreement were not ratified by Carriger. Further, after Carriger's stock had been exchanged, Campbell acknowledged Carriger to be a Campbell stockholder and a director of the corporation. The exchange of stock did not constitute a ratification by Carriger of the Campbell-Arden agreement.

We hold that there was no evidence which established ratification by Carriger of the Campbell-Arden agreement, and that the trial court erred in denying Carriger the equitable relief of specific performance of the option agreement.

█ With reference to Carriger's further contention that there was a corporate merger, Arden exchanged its shares of capital stock for shares of Campbell stock belonging to individual owners. The Campbell corporation exists as a corporate entity. It owns and controls its assets, maintains bookkeeping records, holds annual meetings of stockholders, and has a qualified board of directors.

RCW 23.01.460 defines corporate mergers or consolidations, and provides in part:

"(1) Any two or more domestic corporations, formed for any purpose for which a corporation might be formed under this chapter, and any domestic corporations and any foreign corporations with authority to carry on any business for the conduct of which a corporation might be organized under this chapter, may be

"(a) merged into one of such domestic corporation, or

"(b) consolidated into a new corporation to be formed under this chapter: . . ."

RCW 23.01.470 provides that "The merger or consolidation of corporations can be effected only as a result of a joint agreement entered into" by the board of directors of each corporation desiring to consolidate, or by submitting the agreement to the shareholders of each merging or consolidating corporation for ratification.

The facts in the instant case do not establish a corporate merger or consolidation, within the contemplation of the statutes. See *First Nat. Bank of Seattle v. Walton*, 146 Wash. 367, 262 Pac. 984 (1928); *Sommer v. Yakima Motor Coach Co.*, 174 Wash. 638, 26 P. (2d) 92 (1933). We find no statutory authority for a minority stockholder to be paid for his shares of stock, when the control of the corporation is purchased by another and the corporation retains its assets and continues its corporate business. We affirm the trial court's finding in this regard.

The judgment is reversed, and the cause remanded with instructions to order specific performance of the option agreement. Carriger will recover costs.

FINLEY, C. J., DONWORTH, FOSTER, and HUNTER, JJ., concur.

November 1, 1962. Petition for rehearing denied.