[No. 37169.　Department Two.　February 4, 1965.]

THE STATE OF WASHINGTON, on the Relation of Robert W. Carriger, Appellant, v. CAMPBELL FOOD MARKETS, INC., et al., Respondents.*

*Reported in 398 P. (2d) 1016.

*George C. Butler* (*Critchlow & Williams,* of counsel), for appellant.

*Leavy & Taber,* by *James Leavy,* for respondents.

DONWORTH, J.—This is the second appeal in this litigation. The decision on the first appeal is reported in *State ex rel. Carriger v. Campbell Food Markets, Inc.,* 60 Wn. (2d) 478, 374 P. (2d) 435 (1962).

In that decision, this court held that Carriger was entitled to specific performance of the option agreement granted him in the bylaws of Campbell Food Markets, Inc. (herein called Campbell) to purchase not to exceed 10,000 shares of its common stock within 5 years of its incorporation at $5 per share. The 5-year period expired March 28, 1960. On March 21, 1960, Carriger tendered a cashier's check for $50,-000 in timely exercise of his option which the corporation declined to accept and refused to issue the stock. On the first trial, the court denied Carriger the relief prayed for.

Carriger already owned two blocks of the company's stock in the amounts of 28,278 shares and 2,000 shares, respectively.

In addition to Campbell, Arden Farms Company (herein called Arden) was also named as a defendant in the action. The connection between these two corporations is described in our previous opinion as follows:

"In the fall of 1959, K. T. Campbell, as president of the corporation and a member of the board of directors, undertook to negotiate a sale of the corporation's outstanding 167,027 shares of stock to Arden Farms Company. The transfer was to be effected by a voluntary agreement with each Campbell stockholder to trade his stock for stock in Arden Farms Company, in accordance with an agreed formula.

" . . .

"Carriger sent to his escrow holder an agreement which contained a counteroffer for the transfer of his stock to Arden. The proposed Campbell-Arden agreement was not accepted by Carriger, and his counteroffer, which expired January 8, 1960, was not accepted by Campbell and Arden.

"January 6, 1960, the Campbell-Arden agreement was signed by Arden and all of the Campbell stockholders, except Carriger and Morris F. Moxley, who owned 200 shares.

"January 28, 1960, Carriger deposited 28,278 shares of his stock with the Seattle-First National Bank and offered to exchange for Arden stock on the basis of the formula in the Campbell-Arden agreement. Arden subsequently accepted his offer and issued its stock in exchange. Carriger retained 2,000 shares of Campbell stock and did not resign his directorship."

Our disposition of the first appeal was:

"The judgment is reversed, and the cause remanded with instructions to order specific performance of the option agreement. . . ."

Following the announcement of our decision, Carriger timely filed a petition for rehearing in which, for the first time, he claimed the right to exchange the 10,000 optioned shares under the terms of the Campbell-Arden agreement. Up to that time, the principal issue in the case had been his right to exercise the option to purchase the 10,000 shares of Campbell stock.

The petition for rehearing stated, in part:

"The opinion of the Court as filed does not state that petitioner, after acquiring his 10,000 optioned shares through the order of specific performance to be entered by the Court below, will be entitled to participate in the exchange of stock between the Campbell shareholders and the Arden Farms Company; . . .

"Unless petitioner may now exchange his optioned shares the respondents could prevent petitioner from realizing thereon indefinitely; and having the stock purchase price of $50,000.00 for the Company's use, respondents could turn their initial refusal to perform and the ensuing delay to their advantage by refusing to accept petitioner's Campbell shares in exchange for Arden stock. Under such circumstances petitioner would have won a hollow victory indeed."

The petition was denied by this court.

When the case came on for a second hearing before the trial court on January 24, 1963, after the remittitur from this court had been filed therein, each counsel presented a separate form of proposed judgment which each respectively contended conformed to our decision.

Carriger's counsel strenuously argued that the judgment should not only compel the issuance of his 10,000 shares of Campbell stock under the option but should also direct Arden to exchange under the terms of the Campbell-Arden agreement not only the 10,000 optioned shares but also the block of 2,000 shares of Campbell stock which Carriger had owned for several years but had not offered to Arden when he exchanged his 28,278 shares on January 28, 1960, as mentioned above. In addition, Carriger's proposed judgment not only would have given him about $10 more per share than the price stated in the Campbell-Arden agreement, but also would have awarded him all accrued dividends declared on the Arden stock on and after March 1, 1960.

Respondents' counsel vigorously opposed the entry of this proposed judgment. They argued that the only material documents before the court were: (1) the original judgment of the court entered in the first trial, (2) our decision on the appeal therefrom, (3) the petition for rehearing which was denied, (4) the remittitur from this court dated November 1, 1962, and (5) a letter written by Carriger's counsel to respondents' counsel dated November 14, 1962, reading as follows:

"Pursuant to the decision handed down in subject case, please be advised that Carriger has elected to exercise his option to purchase 10,000 shares of Campbell stock; and to exchange these shares and the 2000 shares he has always owned in accordance with the formula set forth in the Arden Agreement, based on lines 21 through 26 of Judge Hamilton's decision.

"According to our calculations this will represent 5375 shares of Arden stock and a check for $16,131.57 representing the accumulated dividends and fraction shares as set forth below: . . . [Then followed a computation of the dividends paid on 5375 Arden shares in the interim period, plus the value of the partial share.]

"The Arden shares should be issued in 100 share lots to Robert W. Carriger and the checks made payable the same way.

"When you advise me that you are in possession of the Arden shares and the checks, I will deliver Carriger's 2000 shares of Campbell stock to you endorsed in blank and his check for $50,000.00."

After hearing the argument of counsel and considering written briefs, the trial court, on February 14, 1963, announced its oral decision. Thereafter, the court entered supplementary findings of fact, conclusions of law, and judgment.

This judgment ordered, adjudged, and decreed that:

"THIS MATTER coming on to be heard, the plaintiff appearing by his attorneys, George C. Butler and Critchlow & Williams, and the defendants appearing by their attorneys, Leavy and Taber, and the Court having considered the Judgment heretofore entered herein and the opinion of the Supreme Court of the State of Washington on the Appeal from said Judgment and being fully advised, Now, THEREFOR,

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff's Complaint be, and the same hereby is, dismissed with prejudice, except that portion thereof relating to plaintiff's option to purchase 10,000 shares of additional stock in Campbell Food Markets, Inc., for $50,000.00, and

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff is entitled to exercise his option to purchase 10,000 additional shares of stock in Campbell Food Markets, Inc., for $50,000.00 and if plaintiff elects to exercise said option within sixty (60) days of the date hereof, said election shall be valid and defendant, Campbell Food Markets, Inc., shall, upon plaintiff tendering to defendant, Campbell Food Markets, Inc., the sum of $50,000.00 by cash or certified check, issue to plaintiff 10,000 shares of stock in Campbell Food Markets, Inc., and

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that that portion of the Judgment heretofore entered herein on April 17, 1961 providing that the plaintiff shall have the right to elect to exchange his remaining 2,000 shares of stock in Campbell Food Markets, Inc., for stock in Arden Farms Company, is hereby set aside and held for nought, since the time limit set in said Judgment has expired."

On his appeal from this judgment, Carriger makes four assignments of error which will be considered in the order stated in his brief.

Appellant's assignment of error No. 1 states:

"The Court erred in limiting the specific performance granted to plaintiff to the transfer of 10,000 shares of the Campbell Company in consideration of the sum of $50,-

000.00; in refusing to grant specific performance relating back to the date of defendants' breach of the option agreement so that defendants would not profit by having intentionally prevented plaintiff from exchanging his optioned Campbell shares for Arden stock; and in failing to give the remedy of specific performance sufficient breadth to do justice between the parties. . . ."

The vital weakness in this assignment of error is that, whether or not the specific performance relates back to March 21, 1960, the date of appellant's tender is immaterial to the result in this particular case. On the date of appellant's tender to exercise his option for the 10,000 Campbell shares, he had no contractual right against Arden to exchange any shares. Appellant was expressly found, in this court's opinion on his first appeal, to have rejected the original Arden offer, and, in turn, Arden had rejected his counteroffer. Finally, in early January, 1960, Arden accepted appellant's offer to exchange 28,278 shares, but there was then no agreement between them which gave either party any further exchange rights with respect to any other shares.

Furthermore, appellant does not now have any rights derived from any agreement between the two corporations, Campbell Food Markets, Inc., and Arden Farms Company, because there was no intercorporate agreement pertaining to Campbell shareholder rights of exchange. An express ruling on this point (which is now the law of this case) was made by this court in our opinion on appellant's first appeal. *State ex rel. Carriger v. Campbell Food Markets, Inc., supra,* at p. 483.

In oral argument, appellant contended that Arden would have made the additional exchange with him, if appellant had received the 10,000 Campbell shares in March, 1960, or any time before the exchange was actually completed on May 2, 1960. We see nothing in the record which indicates that Arden would have been willing to make this further exchange. The other exchanges to which appellant points to show Arden's willingness were exchanges for shares previously contracted for in January, 1960, and were ex-

changes which Arden was obligated to make under the original agreement. The vital point is whether there was any contractual obligation on Arden's part to acquire the shares which it then expected would remain in the Campbell treasury. Whatever Arden may have been willing to do is immaterial.

The trial court's judgment, entered after its receipt of our remittitur, does not specifically provide for its being effective as to the date of the issuance of the 10,000 Campbell shares, if the option is exercised by appellant. This fact is immaterial to the issues involved in this lawsuit. Therefore, we need not consider it further.

Appellant's assignment of error No. 2 reads:

"The Court erred in making Finding of Fact No. 1 in that the Court thereby reinstated original findings of fact Nos. IV, XII and XIII made after the first trial, although the same had clearly been disapproved by this Court on the first appeal. . . ."

It is true that the trial court, at the second trial, did, by its supplemental finding of fact No. 1, reinstate the findings as claimed. In the original trial, the court's findings of fact, the substance of the findings Nos. 4 and 13 (of which appellant complains) is that appellant inferentially accepted the original Arden exchange offer, including all its provisions. These findings were disapproved by this court on the first appeal, and reinstatement of them at the second trial was error. However, this is totally harmless error, in so far as appellant is concerned. He was awarded specific performance by the judgment of the trial court in the second trial, which is now before us for review. That judgment was contrary to the findings of fact of which appellant complains. Had the trial court followed these reinstated findings, then a decree of specific performance would have been precluded. Clearly on this record, appellant was not harmed by this error.

Reinstatement of finding of fact No. 12, of which appellant complains, is totally irrelevant to the result in this case. The finding simply recites the established fact that neither K. T. Campbell nor Fred G. Campbell "undertook

to seek or have sought to exercise" their stock option pursuant to the bylaws. This fact is totally immaterial in our view of this case. It is neither favorable nor unfavorable to appellant. It does not affect his rights, nor does it impute to him any lack of equity in his actions. Since this finding is irrelevant to the issues in this case, in one sense it might be called error, but, if it is error, it is totally harmless error.

▆ It is apparent to us that the errors complained of by appellant in his assignment No. 2 are all harmless errors and hence cannot be reversible errors.

Appellant's assignment of error No. 3 states:

"The Court erred in making Finding of Fact No. II, in that plaintiff did in fact elect to exchange his remaining 2,000 shares of Campbell stock within the time allowed therefor."

Finding of fact No. 2 reads as follows:[1]

"That plaintiff has not, within the time limitation provided for, elected to exchange his remaining 2,000 shares of stock in Campbell Food Markets, Inc., for stock in Arden Farms Company."

▆ This "finding" is based on two additional facts. First, the right to exchange these shares was based on the trial court's original judgment, which in part provided that Carriger be given 60 days from the time of the entry of the judgment, during which Carriger could exchange his 2,000 remaining Campbell shares for Arden shares "under the terms of the stock exchange agreement" originally offered by Arden. If an appeal was taken, the 60 days would begin to run with the "coming down of the remittitur." This part of the original judgment was not appealed from, hence it continued in effect, regardless of the reversal of the other parts of the judgment. The remittitur of this court was dated November 2, 1962, which was a Friday, and presumably was delivered no later than the following Monday, November 5, 1962. Under the provisions of the original

---

[1]This "Finding of Fact" is really a conclusion of law, or a mixed finding of fact and conclusion of law, because it is based on an interpretation of a letter to determine its legal significance.

judgment, the 2,000 shares which were held by Carriger could be exchanged no later than January 5, 1963. The second trial started January 24, 1963.

Furthermore, on November 14, 1962, Carriger's attorney sent the letter to respondents' attorney which was quoted above in this opinion. This letter was the only communication between the parties pertaining to the 2,000 shares that could have been construed as an offer to exchange within the time limits of the trial court's original judgment. The letter was not answered by respondents' counsel. Each party now claims that the other is at fault in permitting the period of the 60 days to expire after the remittitur was received by the trial court without Carriger's having exercised the (court granted) right to exchange these shares.

The trial court's oral decision (on the second trial) states, in part:

". . . [U]nder the direction of Judge Hamilton, the letter submitted by Mr. Critchlow, attempted to exercise the option of the 2000 shares, was clearly conditioned on other events and was not really an offer of exchange. The 2000 was included with the 10,000 and one was conditioned on the other. . . ."

We agree with the trial court's analysis of that letter, although we prefer to state our analysis of it somewhat differently. Appellant argues that the trial court has given a strained interpretation to the letter. Appellant claims that he made two separate offers to exchange the two separate blocks of stock in the same letter simply because the exchanges were both controlled by the same formula of exchange and with the same party. Appellant *could* have worded his letter in the fashion he describes, but, as we read it, he did not. Instead, he combined the two offers in each stage of his discussion of the proposed exchanges as if they were both part of one demand. Appellant even conditioned his demand for the 10,000-share exchange upon the acceptance of his demand for the 2,000-share exchange so that the only reasonable interpretation of the letter was that the 2,000-share exchange could not be accepted without

also accepting the demand for the exchange of the 10,000 shares.

■ Whatever the nature of the right granted to appellant by the trial court at the first trial to exchange his 2,000 shares, it was to be treated like a 60-day option. It was to be exercised by accepting the terms of the Arden agreement.[2] It applied only to 2,000 shares. Contract law requires that the exercise of an option must be made in the same terms as the option. If the person holding the option right adds any conditions to his exercise of the option which are not included within its terms, then the attempted exercise of the option becomes, in law, a counteroffer. See 1A Corbin on Contracts § 264, pp. 522, 523. A counteroffer is not an exercise of an option.

In this instance, the demand for the exercise of the judgment right granted by the court must be made in the terms provided for by the judgment. Appellant's letter was, in law, an offer to exchange on the terms in his letter rather than on the terms provided for in the judgment. Appellant's letter was not, in law, an exercise of the right granted by the judgment. Since appellant's letter was the only communication which could possibly have been considered an exercise of the judgment right within the time limit imposed, the judgment right expired on January 5, 1963, without having been exercised by appellant. There is no error in the trial court's supplemental "Finding of Fact No. II."

Appellant's assignment of error No. 4 reads:

"The court erred in making conclusion of law No. 1 in that the Court thereby reinstated original conclusions of law Nos. III and IX, although the same had clearly been disapproved by this Court on the first appeal.

---

[2]Reference to the terms of the Arden agreement is interpreted to mean only the exchange formula, and the procedures to be followed to accomplish the exchange. The trial court at the second trial noted that the judgment might be construed to require appellant to agree to not exercise his option for the 10,000 shares, but, as the trial court acknowledged, it is not necessary to answer that question in order to decide this case.

Conclusions of law Nos. 3 and 9 read as follows:

"III. That the plaintiff by his actions impliedly ratified the transaction.

" . . .

"IX. That plaintiff is attempting to accept the fruits of the agreement with one hand, decline with the other hand and obtain greater benefits with the third hand, and that the plaintiff is not an innocent dissenting stockholder."

It is true that the trial court did, in the second trial, reinstate conclusions of law Nos. 3 and 9. It is also true that our first opinion disapproves of these conclusions of law. However, in each instance the reinstatement of these conclusions of law is harmless error because neither of them affected the result in the second trial, which was held following the receipt of the remittitur.

Conclusion of law No. 3 was clearly not followed by the trial court after the remittitur was received because appellant was granted the right to specific performance of his option for 10,000 shares of Campbell stock. Conclusion of law No. 3 (if it had been followed) would have precluded the specific performance because the Arden "transaction referred to would have bound appellant not to exercise his option." Conclusion of law No. 9 likewise had no effect on the outcome of the second trial, because the exchange of the 10,000 Campbell shares for Arden shares, which was sought by appellant, was denied because appellant simply had no right to the exchange. The denial of this additional benefit to appellant was not based on lack of equity in his case.

We believe it is true that, as the trial court originally put it:

" . . . plaintiff is attempting to accept the fruits of the agreement with one hand, decline with the other hand and obtain greater benefits with the third hand. . . ."

The reason appellant does not succeed in obtaining the greater benefits with the third hand is because he simply has no right to them. Appellant's right to the exchange of the 10,000 Campbell shares for Arden shares could exist only as a result of an agreement between himself and Arden.

The only agreement which could possibly have pertained to these additional shares was the original Arden agreement. Appellant denied that he was bound by that agreement in his first appeal. Now, on the second appeal, appellant cannot claim the benefits of that agreement.

The option for the 10,000 shares in the Campbell bylaws was a separate agreement between each incorporator and Campbell Food Markets, Inc. Appellant's right to the exercise of that option was against Campbell Food Markets, Inc. There was no connection between this option and Arden or the original Arden exchange agreement. The option could not and did not give appellant the additional right to an exchange of these 10,000 shares with Arden. Appellant had no rights against Arden for an exchange of these 10,000 shares because appellant had no agreement with Arden for such an exchange.

The judgment of the trial court is hereby affirmed.

FINLEY, OTT, and HUNTER, JJ., and FOLEY, J. Pro Tem., concur.

March 17, 1965. Petition for rehearing denied.