[No. 18434-6-II.   Division Two.   October 4, 1996.]

DUANE OTTGEN, ET AL., *Appellants,* v. CLOVER PARK
TECHNICAL COLLEGE, *Respondent.*

*John A. Rorem,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Douglas H. Brown, Assistant,* for respondent.

TURNER, J. — Duane Ottgen and four other students ap-

peal the trial court's dismissal of their claims for breach of contract and violation of the Consumer Protection Act (CPA). The students claim that their teacher's representations as to course content created a contract between them and the college. We affirm the trial court's dismissal of the breach of contract claim. The students failed to prove mutual assent between themselves and the college and thereby failed to establish the existence of a binding contract. The students' CPA action was properly dismissed because the college is exempt from the CPA. Affirmed.

## FACTS

In 1988, Washington passed the Certified Real Estate Appraiser Act, RCW 18.140. LAWS OF 1989, ch. 414 (1990). To be a certified or licensed real estate appraiser, one must satisfy both educational and experience requirements. RCW 18.140.080 -.090. The education requirement is between 75 and 165 classroom hours.[1] WAC 308-125-030(1). To meet the experience requirement, 3,000 hours of actual appraisal work must be completed over two to five years. WAC 308-125-070.

In response to the anticipated need for certified real estate appraisers, Clover Park Technical College (CPTC) established an educational program to train students for entry-level employment in the real estate appraising business. The "Professional Residential Real Estate Appraiser" program offered by CPTC involved some 800 hours of classroom instruction and approximately 300 hours of realistic training. The program far exceeded the minimum classroom hours required for appraiser certification. Course information stated that its objective was to qualify students for entry-level employment in the residential real estate appraising industry. None of the material said the course was designed to meet state certification requirements. The Department of Licensing provides,

---

[1]The actual number of classroom hours required depends on the level of certification or licensing desired. *See* WAC 308-125-030, -040, -045.

upon request, information packets containing a two-page explanation of the certification requirements and copies of applicable RCW and WAC provisions.

CPTC hired Mike Balkwill to teach the appraiser course. In early 1991, Mike Balkwill apparently negotiated an agreement with an organization called TRW. Under this agreement, CPTC students would do appraisals for a fee and be supervised by TRW. This part of the course was intended to provide realistic training for CPTC students but not necessarily to provide students with experience toward state certification requirements.

Duane Ottgen and four other students wanted to become certified real estate appraisers. They attended orientation sessions and enrolled in the "Professional Residential Real Estate Appraiser" program offered by CPTC. Apparently, Balkwill made a number of representations about the course to the students during the orientation sessions. Students testified that he told them the program would provide 1,000 hours of doing for-fee appraisals for TRW and that those hours would count toward the experience requirement for state certification.

The students attended the CPTC program in 1991 and 1992. In 1992, TRW backed out of its agreement with Balkwill. Thus, the students obtained little or no work experience to satisfy state certification requirements.

Balkwill was terminated in the summer of 1992 and replaced by Robert Woodward. Woodward informed appellants that the course would meet only the educational requirements for state certification and that excess course work would not substitute as part of the experience requirement. All of the students continued and ultimately finished the course. The CPTC program provided students with sufficient educational hours to satisfy the educational requirements for the highest level of state appraisal certification. The students said they would not have taken the course, however, had they known that no work experience hours toward certification would be earned.

The students sued CPTC for breach of contract and

violation of the Consumer Protection Act. The students' CPA action was dismissed for failure to state a claim upon which relief may be granted. A bench trial was held on the sole issue of whether CPTC breached a contract.

The trial court found that: (1) Balkwill indeed represented that at least 1,000 hours of actual appraisal would be applied toward certification; and (2) no school catalogue or written statements of CPTC guaranteed that the course would provide experience toward certification. The trial court concluded that: no contract existed between students and CPTC to provide work experience; the agreement between CPTC and TRW was uncertain; and oral representations of a teacher do not create a contract between an educational institution and its students.

The trial court dismissed the students' breach of contract action against CPTC. The students timely appealed.

## ANALYSIS

### A. Breach of Contract Claim

■ ■ The students assign error to the trial court's conclusion that there was no binding contract between them and CPTC.[2] They argue that Balkwill's oral representations created an enforceable contract between the

---

[2]The students also assign error to (1) the trial court's refusal to enter certain factual findings and (2) its entry of finding of fact 12, which stated that the students received the benefit of extensive educational experience. We decline to exhaustively examine these assignments of error, which are supported neither by argument in the appellants' brief nor by citation to authority. *State v. Lord*, 117 Wn.2d 829, 853, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992); *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). Nevertheless, we note that neither claim of error warrants reversal of the trial court's rulings. The court's refusal to enter the students' proposed findings was proper. Some were not relevant to the issue of whether there was a contract. The rest were redundant. Although finding of fact 12 is amply supported by the evidence, students argue that it is irrelevant. Where an irrelevant finding is neither favorable or unfavorable to the complaining party, any error is totally harmless error. *See Prager's Inc. v. Bullitt Co.*, 1 Wn. App. 575, 577, 463 P.2d 217 (1969); *State ex rel. Carriger v. Campbell Food Mkts., Inc.*, 65 Wn.2d 600, 398 P.2d 1016 (1965). Students do not argue that the surplusage was prejudicial or harmful. The trial court did not err in its findings.

students and CPTC. They contend that the contract was breached when CPTC's appraiser course failed to deliver the promised 1,000 hours of work experience for state certification. We hold that the trial court's conclusion was proper as the students failed to prove the existence of a contract between themselves and CPTC.

██ ██ The students cite to *Marquez v. University of Wash.*, where it was held that the relationship between students and universities is contractual in nature.[3] But the students, as the parties alleging a contract, bear the burden of proving the contract.[4] It is essential to prove mutual assent between the contracting parties to establish the existence of a contract.[5] In Washington, we follow the objective manifestation theory of contracts; "mutual assent of the parties must be gleaned from their outward manifestations."[6]

The *Marquez* court noted that specific terms of an alleged education contract are found in the school's publications:

> Since a formal contract is rarely prepared, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications . . . .[7]

Here, the students failed to establish mutual assent.

---

[3]*Marquez v. University of Wash.*, 32 Wn. App. 302, 305, 648 P.2d 94, *review denied*, 97 Wn.2d 1037 (1982), *cert. denied*, 460 U.S. 1013 (1983), and *Maas v. Gonzaga Univ.*, 27 Wn. App. 397, 400, 618 P.2d 106 (1980), *review denied*, 95 Wn.2d 1002 (1981).

[4]*See Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944, 640 P.2d 1051 (1982); *Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 645, 898 P.2d 347 (1995).

[5]*See Multicare Med. Ctr. v. Department of Soc. & Health Servs.*, 114 Wn.2d 572, 586, 790 P.2d 124 (1990).

[6]*Id.* at 587.

[7]*Marquez*, 32 Wn. App. at 305 (quoting *Peretti v. Montana*, 464 F. Supp. 784, 786 (D. Mont. 1979) (quoting Eugene L. Kramer, Note, *Expulsion of College and Professional Students - Rights and Remedies*, 38 NOTRE DAME Law. 174, 183 (1962))), *rev'd on other grounds*, 661 F.2d 756, 767 (9th Cir. 1981). The *Marquez* court assumed that a reference to academic aid contained in a prelaw handbook was definite enough to form a part of Marquez's contract with the law school, but concluded that the school did not breach such a contract. *Marquez*, 32 Wn. App. at 305.

The outward manifestations of CPTC show that the college agreed only to provide an education sufficient for entry-level employment in the real estate appraising industry. None of CPTC's conduct indicates an intent to enter a contract promising to provide work experience toward state certification. All the written materials regarding CPTC's real estate appraiser course (catalog, course outline and fee schedule) stated that the course objective was "[t]o qualify the student for entry-level employment in the residential real estate appraising industry." None of these materials stated anything about meeting the state certification requirements for either education or work experience. Although it is unclear whether the students viewed CPTC's catalog, it is undisputed that each student received copies of the course outline and fee schedule.

■ We reject the students' unsupported assertions that "Mr. Balkwill was the agent of the Respondent." The students cite to no legal authority stating that a contract between students and a school can be created by oral representations of a teacher. Because they failed to prove that Balkwill had authority to legally bind CPTC, the students have failed to establish a contract between themselves and CPTC. Accordingly, we affirm the trial court's conclusion that there was no contract and its dismissal of the student's contract claim.[8]

### B. Consumer Protection Act

The students also challenge the dismissal of their CPA

---

[8]The facts of the case might support a finding that a unilateral contract was formed between the students and Balkwill. The creation of a unilateral contract was explained in *Cook v. Johnson*, 37 Wn.2d 19, 23, 221 P.2d 525 (1950):

"A unilateral contract is a promise by one party — an offer by him to do a certain thing in the event the other party performs a certain act. The performance by the other party constitutes an acceptance of the offer and the contract then becomes executed. Until acceptance by performance, the offer may be revoked either by communication to the offeree or by acts inconsistent with the offer, knowledge of which has been conveyed to the offeree."

Absent proof that Balkwill was the agent of CPTC, however, such facts establish only a unilateral contract between the students and Balkwill, not the students and CPTC.

claim. The CPA forbids unfair or deceptive acts in the conduct of any trade or business. RCW 19.86.020. We reject the students' contention that the college is subject to the CPA. The holding in *Washington Natural Gas v. PUD No. 1*[9] exempts the college from the CPA.

■ ■ *Washington Natural Gas*,[10] the Supreme Court ruled that municipal corporations were exempt from the operation of the CPA. The court said the CPA applies only to "natural persons, corporations, trusts, unincorporated associations and partnerships."[11] Nowhere in the CPA does it say that municipal corporations or political subdivisions of the state are subject to the CPA.

> Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication.[12]

The court concluded by implication that municipal corporations and political subdivisions are exempt from the CPA.

■ CPTC is not a "natural person[], corporation[], trust[], unincorporated association[] [or] partnership[]."[13] Rather, it is part of the Washington Community and Technical College System[14] and is supervised by the College Board, both of which are political subdivisions of the State of Washington.

---

[9]77 Wn.2d 94, 459 P.2d 633 (1969).

[10]77 Wn.2d at 98.

[11]*Washington Natural Gas*, 77 Wn.2d at 98 (quoting RCW 19.86.010).

[12]*Washington Natural Gas*, 77 Wn.2d at 98.

[13]*See* RCW 19.86.010(1).

[14]*See* The Community and Technical College Act of 1991, ch. 28B.50 RCW. The students note in their reply brief that CPTC was not transferred to state control until September 1991. They argue that when they started the course CPTC was run by the Clover Park School District. *See* RCW 28B.50.010, effective Sept. 1, 1991. We reject this argument because Ottgen, the first of the students to attend the course, began the course on or after September 1, 1991.

The students attempt to distinguish *Washington Natural Gas*, arguing they are consumers while the utility plaintiff in *Washington Natural Gas* was not. The Supreme Court based its ruling in *Washington Natural Gas* on the language of the CPA that indicated it did not apply to municipal corporations or political subdivisions of the State. The decision had nothing to do with plaintiff's identity. Accordingly, the Court's ruling that the CPA does not apply to municipal corporations and political subdivisions governs the case at hand.

██ We review the superior court's dismissal for failure to state a claim as a question of law.[15] To prevail on a CR 12(b)(6) motion, the defendant must establish that the plaintiff cannot prove any set of facts consistent with the complaint that would entitle him or her to relief.[16] The fact that CPTC is exempt from the CPA is a complete bar to the students' claim that CPTC violated the CPA. Accordingly, the trial court's order of dismissal was appropriate.

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

---

The other students first began the course in early 1992. In all cases, CPTC was under state control during the appraiser course.

[15]*Fondren v. Klickitat County*, 79 Wn. App. 850, 854, 905 P.2d 928 (1995).

