PARKER DRILLING COMPANY and
Commercial Union Assurance
Company, Appellants,

v.

Rick WESTER and Alaska Workers' Compensation Board and Alaska Pacific Assurance Company, Appellees.

No. 5759.

Supreme Court of Alaska.

Sept. 24, 1982.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellants.

Michael A. Barcott and Monica Jenicek, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

PER CURIAM.

Rick Wester, an 18 year old roustabout on a Cook Inlet drilling rig, was seriously injured while working for Parker Drilling Company on April 2, 1975. He fell some thirty feet to the steel deck of the rig, fracturing his hip and right arm, shattering his right elbow, and suffering internal injuries.

Wester was temporarily totally disabled through July 1975. At that time his doctor released him to return to work on a trial basis.[1] Following his return to work, Wester's arm and elbow showed "periosteal post-traumatic reaction." Post-traumatic arthritis was predicted as a possibility as early as October 1975. In January 1976, the doctor reported Wester's complaints of increasing pain and stated:

> "I do not believe he is going to be employable as a roustabout on the drill-

---

1. The doctor's report to the Workers' Compensation Board at this time indicated that the only significant remaining problem was a lack of function in the right elbow; the doctor noted "some permanent residual disability" apparently primarily due to the elbow.

ing rig. He has sufficient permanent damage to his right elbow which prohibits him from doing heavy labor and as time goes on he will develop a progressive arthritic deterioration of the elbow."

The doctor suggested vocational rehabilitation and stated "at this point [Wester] realizes that his future is not in this type of heavy labor." [2]

Wester evidently decided to take his chances and to continue work on the rig. He was given a permanent partial disability rating of loss of 50% of an arm, a lump sum payment was made, and his workers' compensation file was closed in early 1976.

Wester suffered a traumatic on-the-job injury to his right elbow and arm in October 1976, but continued to work on the drilling rig during those periods that he was not disabled.[3] In September 1977, he was again cautioned that "this is not going to be a long term type of job for him" and that he already had a significant post traumatic arthritis "which is going to gradually get worse."

In 1978, Wester lost three weeks work time when he cut his left hand. He injured his right elbow again in January 1979. The 1979 injury healed completely and did not aggravate or accelerate the pre-existing degenerative arthritis of the right arm. Once again, however, Wester's doctor advised him not to return to his previous employment "because of the degenerative disease that is in his elbow as a result of his initial surgery and fracture."

This time, Wester evidently decided to heed his doctor's advice and he requested vocational rehabilitation funds. Parker Drilling Company had switched workers' compensation carriers in February 1977, changing from Commercial Union Assurance Company [Commercial Union] to Alaska Pacific Assurance Company [ALPAC]. Both carriers refused to provide Wester with vocational rehabilitation funds, each claiming that it was the other carrier's duty to make the payment.

Wester brought an amended application before the Workers' Compensation Board seeking temporary total disability compensation, permanent partial disability compensation, the statutory 20% penalty for late payments, vocational rehabilitation funds, medical costs, costs and attorney's fees.

A hearing was held before the Board on August 1, 1979. The Board found that Wester's need for vocational rehabilitation was a direct consequence of the 1975 injury, and that there had been no additional injury or aggravation of the original injury. Thus, the Board concluded that Commercial Union, the insurer at the time of the original injury, was responsible for payment of the rehabilitation funds.

Commercial Union appealed to the superior court. In a memorandum decision, the superior court affirmed the Board's decision. Commercial Union appeals again.

■ Commercial Union argues that Wester's employment after the change in insurance carriers contributed to his present disability and that under the last injurious exposure rule adopted in *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590 (Alaska 1979), ALPAC should be liable for all vocational retraining or other payments. In *Saling*, we held that when employment with successive employers contributes to a worker's disability, the employer at the time of the most recent injury is liable for disability payments. We also made it clear that aggravation of a preexisting condition is sufficient to impose liability on the successor employer. 604 P.2d at 592 n.4. Although *Saling* involved successive *employers*, while this case involves successive *carriers*, the distinction is of no significance as far as application of the last injurious expo-

---

**2.** An equally blunt assessment had previously been made in December 1975, when the doctor noted Wester felt so limited in function that he might actually endanger his co-workers.

**3.** Wester lost two months work when his right arm was struck by drilling tongs in October 1976. Surgery was performed in mid-1977 to alleviate residual problems; according to the insurance carrier's reports this surgery was connected to the 1976 accident, although the doctor's report indicates the 1975 injury was the cause.

sure rule is concerned. *See* 4 A. Larson, Workmen's Compensation Law § 95.12 at 17–71 (1982).

In this light, the factual issue before the Board was whether Wester's employment while ALPAC was the carrier aggravated or accelerated the degenerative arthritis in his right arm. On appeal, the factual findings of the Board must be upheld if there is substantial evidence to support them. *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264, 265 (Alaska 1974).

In its decision, the Board focused solely on the 1979 injury, finding that it was not an additional injury or an aggravation, but rather that it was merely a recurrence of the 1975 injury. The evidence is clear and uncontradicted, and it is uncontested by Commercial Union, that the 1979 injury did not contribute to Wester's current disability. However, the Board's focus was too narrow; it should have also considered whether Wester's employment while ALPAC was the carrier in any other way accelerated or aggravated the degenerative arthritic condition originally caused by the 1975 accident.

The evidence is clear that Wester's continued use of his arm in heavy labor aggravated or accelerated his preexisting injury.[4] When asked about the degenerative arthritic condition of Wester's elbow, Wester's doctor expressed an opinion that the "[degenerative] changes ... can be greatly accelerated with hard use." According to the doctor's testimony, if Wester had stopped working in his field, there would have been fewer degenerative changes in his arm. ALPAC has not pointed to any evidence that negates these opinions expressed by the doctor, nor have we found any. It is thus apparent that there is no substantial evidence to support a finding that Wester's employment while ALPAC was the carrier did not aggravate or accelerate the preexisting condition.[5] We therefore conclude that there is no substantial evidence to indicate that the date of Wester's "last injurious exposure" was at any time prior to the date he ceased working for Parker Drilling, a conclusion we reach without any reliance on the injury which occurred on that day.

The remaining issue before us is whether the last injurious exposure rule adopted in *Saling* as to permanent total disability benefits is also applicable as to vocational retraining benefits. We see no reason why the *Saling* rationale should not be extended to cover vocational rehabilitation benefits. In *Saling*, we concluded that the Board's finding of a preexisting total disability was without support in view of Saling's demonstrated earning capacity following the first injury. It would be inconsistent to reach a different result as to the need for retraining. Wester's demonstrated earning capacity following his first injury is thus equally decisive on the question of his need for vocational retraining. As long as Wester continued to work at his former job, his earning capacity was not impaired and he was not entitled to receive retraining benefits.

In conclusion, we hold that there was no substantial evidence before the Board from which it could be determined that Wester's "last injurious exposure" occurred at any time prior to the time he was forced to cease working due to his 1979 injury. The judgment of the superior court affirming the Board's decision is REVERSED and this case is REMANDED for further remand to the Board for entry of such orders consistent with this opinion as may be appropriate.[6]

---

4. This was the conclusion of the superior court as well. The court's decision states in part: "Nor is there any question that use of the elbow joint from 1975 to 1979 aggravated the degenerative condition."

5. ALPAC's strongest argument on the factual issue is that the amount of post-1977 degeneration is unclear and that there is substantial evidence to show pre-1977 degeneration. Obviously, these arguments do not address the issue of substantial evidence negating aggravation or acceleration of the preexisting condition.

6. The present status of this case is not clear from the record before us. It appears that the Board has subsequently decided various questions left open by its decision herein. We also note that the Board's decision herein is silent with respect to Wester's various requests for

temporary total disability, permanent partial disability, a 20% late payment penalty, medical costs, and attorney's fees. We express no opinion as to the appropriate course for the Board with respect to any of those claims.