**The CITY OF the VILLAGE, a Municipal Corporation, and the Mayor of the City of the Village, Plaintiffs in Error,**

v.

**Wallace N. McCOWN, Defendant in Error.**

**No. 41708.**

Supreme Court of Oklahoma.

Oct. 29, 1968.

Wayne Quinlan, Oklahoma City, for plaintiffs in error.

McClelland, Collins, Sheehan, Bailey, Bailey & Short, and Hemry & Hemry, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal is in a case in which it was sought to relieve a vacant lot in what is now the City of The Village, a municipality adjoining the northwestern part of Oklahoma City, from the "A–1 Residential", or one-family-residence, zoning restriction contained in one of said municipality's ordinances.

The lot is legally described as Lot 17, Block 1 of The Village's Lakeside Estates Addition, and is located at the intersection of May Avenue and Hefner Road. Both of these paved streets were constructed on section lines, and Hefner Road forms the boundary between The Village and a northern section of Oklahoma City.

The subject zoning ordinance, referred to as "Ordinance No. 56" was enacted by the Town of The Village, the City of The Village's predecessor, in 1954.

The defendant in error, hereinafter referred to as "plaintiff", became the owner of the lot in 1956. After a filling, or service, station had been constructed on the same intersection's northeast corner, which has been zoned for commercial property under an Oklahoma City zoning ordinance, and another service station had been constructed on said intersection's southeast corner, given "B–1 Commercial" classification under The Village's zoning ordinance, and plaintiff had made two unsuccessful applications to The Village's zoning authorities for a change in his property's zoning classification from "A–1 Residential" to "B–1 Local Business District", in 1962 and 1963, respectively, he instituted the present action against the plaintiffs in error, hereinafter referred to as "defend-

ants", to enjoin them and their employees and representatives from enforcing Ordinance No. 56 against his property, and for a declaratory judgment adjudging that said ordinance, in so far as it purports to restrict the use of his Lot 17 to residential use only, is unconstitutional, null, and void, and decreeing said lot to "fall in property Class 'B–1 Local Business District'". To obtain such relief, plaintiff alleged, among other things, in substance, that by reason of his lot's location on the two busy thoroughfares of May Avenue and Hefner Road, and its surroundings, including its proximity to the two afore-mentioned service stations, it is now useful only for business purposes, and that it is, and has been, impossible to utilize it for the purposes permitted by the Ordinance's Class A–1 use.

In their answer, defendants specifically denied the allegations of plaintiff's petition to the effect that its City Council's previous denials of his applications for rezoning were arbitrary, unreasonable, and confiscatory. In said pleading, defendants alleged, among other things in substance, that plaintiff's lot was designated as residential property in the Lakeside Estate Addition's plat restrictions (which have never been modified, or vacated) at the time he purchased it; that the zoning sought by plaintiff would correctly fall within the category of "spot zoning", that near plaintiff's property are several developed residential properties having values of from $25,000.00 to $45,000.00, which would be depreciated if plaintiff's petition were granted.

At the trial before the court more than six months later, no property owner of Lakeside Estates Addition appeared, as such, in opposition to plaintiff's petition; and no one appeared as a defense witness.

The plaintiff introduced into the evidence, among others, photographs of the two afore-mentioned service stations, and also a Dairy Queen drive-in-type of business establishment, located on the east side of May Avenue, ½ block south of its in-

tersection with Hefner Road. Plaintiff also elicited testimony from a Mr. Dafford, of the Oklahoma Highway Department's planning division, that consideration has been given to widening, and increasing the number of traffic lanes on May Avenue, which is a part of State Highway No. 74. This witness also testified, over defendant's objections, concerning traffic counts and studies said Department had made on streets in The Village, beginning in June, 1963. According to one of these counts made in December, 1964, the number of vehicles passing a point approximately half way between Hefner Road and Britton Road, on May Avenue, which intersects these two parallel roads at points a mile apart, was 9,255. This witness also testified that the traffic count on Britton Road, taken between May Avenue and Pennsylvania Avenue, which parallels it many blocks to the east, was 10,326, and that the count east of Pennsylvania Avenue was 11,170. This witness further testified that Hefner Road constitutes the only paved route from The Village to Lake Hefner, unless 63rd Street (which is miles to the south) is used. Witness Spradling, a realtor and appraiser for an Oklahoma City savings and loan firm, testified that he had made an investigation of the subject lot and the surrounding property, and that said lot's "highest adaptable use would be for a business property, * * *"; that it has a value, for such use, of $78,800.00. On cross examination, Spradling testified that, in addition to there being filling stations on the northeast and southeast corners of the May Avenue-Hefner Road intersection, he understood that the northwest corner of said intersection (directly across Hefner Road from the subject lot) has also been zoned for business, and that a person buying plaintiff's lot to build on, wouldn't build anything there but business." When interrogated as to other vacant lots, generally, on Hefner Road, and on May Avenue to the south of this intersection, this witness testified that they would be more desirable for residences than for business property. In answer to plaintiff

counsel's inquiry on redirect examination as to whether he would recommend to his company the making of a loan on the property, if a $15,000.00 residence was built on Lot 17, he admitted that it would have some loan value, but stated that he would not recommend "the maximum loan" on it, as residence property. This witness also testified that he didn't recall any substantial improvements being made on any residences near Lot 17 "in the last few years". Mr. Spradling admitted, on cross examination, that he had not considered the matter of how the zoning of this lot for commercial uses "would fit in" with all existing zoning in The Village, or with any "overall" Master Plan of zoning that said municipality might have.

At the close of the evidence, the cause was taken under advisement for a period during which the judge, by agreement of the parties, personally viewed Lot 17 and its environs, and the parties submitted their respective briefs on the issues involved in the case.

Thereafter, the court entered judgment for plaintiff. The journal entry of said judgment contains among others, findings that the hereinbefore mentioned northwest corner of the intersection involved has been zoned by Oklahoma City for business use "and is known as Quail Creek Shopping Center"; that the Dairy Queen is across May Avenue and "just south" of the subject property and "caters, day and night" to a drive-in business, and just south of the Dairy Queen is another service station." The court further found that there is an "extremely large" church fronting on May Avenue, immediately beyond this last mentioned service station, and that there is another church across May Avenue from it. The court also found "May Avenue is among the most heavily trafficked streets in Oklahoma City, and evidence * * * established that plans are under way to widen it into a four lane thoroughfare in front of and beyond the subject property." The court further found that the unrefuted testimony estab-

lished that Lot 17 is worth $70,000.00 to $75,000.00 "when put to business use, which is its highest and best use, but, of only nominal value for residential purposes."

The court determined that The Village's refusal to change the zoning of plaintiff's lot to an extent that would allow its use for a service station "was an arbitrary, unreasonable and capricious exercise" of police power, and adjudged that "the basic physical facts surrounding the subject property left no room for reasonable doubt nor debate, * * *".

After the overruling of their motion for a new trial, defendants perfected the present appeal.

Under the first proposition defendants urge for reversal, they complain that the trial court's judgment results—as to the area containing plaintiff's lot—in "spot zoning", which they say has nearly always been looked upon with disfavor by the courts. They cite authorities defining "spot zoning" as that which places a particular parcel of property in a different zone from that of neighboring property, and quote Vol. 8 of McQuillan on Municipal Corporations, 3rd (Rev.) Ed. sec. 25.83 to the effect that such zoning is invalid " * * * where it is without a reasonable basis * * *". This provokes the obvious inquiry—assuming that the trial court's judgment results in "spot zoning" —as to whether it has a reasonable basis, or is justified under the circumstances of the present case. In City of Tulsa v. Nicholas, Okl., 415 P.2d 917, "piece meal" zoning was referred to as "strip zoning", and we demonstrated, referring to City of Tulsa v. Swanson, Okl., 366 P.2d 629, and Wood v. Knox, Okl., 277 P.2d 982, that the rezoning of particular properties may be upheld, even though it may result in other properties in the same area having different zoning classifications. On the face of the trial court's findings and judgment the rezoning of plaintiff's Lot 17 in this case would appear to have a reasonable basis, and ostensibly be justified.

Under their Propositions numbered "3" and "4", defendants make various and sundry complaints concerning the trial court's findings and judgment, which we think are unnecessary to detail. We have carefully examined them, in the light of the record, and all applicable decisional law, and are of the opinion that none of them have sufficient merit to constitute valid ground for reversal of the trial court's judgment. Assuming, without deciding that some of the court's findings were not supported by the evidence, it does not appear they were essential to the judgment, or that, disregarding them, the judgment lacks sufficient evidentiary support on the crucial issues. Such alleged errors therefore cannot be considered prejudicial, or reversible, error. See Choctaw Gas Co. v. Corporation Commission, Okl., 295 P.2d 800, 806, and Brown v. Prince, CCA 10th Cir., 161 F.2d 537, 540.

In view of the foregoing and our careful examination of the record, we conclude, as we did in City of Tulsa v. Nicholas, supra, that the trial court's essential findings and judgment cannot be held to be clearly against the weight of the evidence. Therefore, said judgment must be, and is hereby, affirmed.

The Court acknowledges the aid of Supernumerary Judge HARRY L. S. HALLEY in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference the foregoing opinion was adopted by the Court.

All the Justices concur.