**Maynard G. RAAB, Appellant,**

v.

**PARKER DRILLING and Armco Insurance Group, Appellees.**

No. S–681.

Supreme Court of Alaska.

Dec. 13, 1985.

Chancy Croft, Anchorage, for appellant.

Michael A. Budzinski, Stone, Waller & Jenicek, Anchorage, for appellees.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

PER CURIAM.

The decision of the superior court affirming the decision of the Alaska Worker's Compensation Board is AFFIRMED for the reasons expressed in the opinion of the superior court set forth in the appendix.

## APPENDIX

## OPINION

This matter is before the court on an appeal by Maynard G. Raab of the Decision and Order of the Alaska Worker's Compensation Board (AWCB) dated November 22, 1983, denying his claim for additional compensation. IT IS HEREBY ORDERED that the Decision and Order of the AWCB is AFFIRMED.

On June 27, 1979, Maynard Raab was injured while working for Parker Drilling Company as a floor hand in Toonalik, Alaska. As a result of this injury, appellant was treated by Dr. Richard Garner, who operated to repair a torn biceps tendon in Raab's right arm. On April 30, 1980, Dr. Garner gave Raab a 7% whole-body permanent partial disability rating.

As a result of this injury, a compromise and release agreement settling Raab's worker's compensation claim was executed by Raab. This agreement, which was approved by the AWCB on August 28, 1980, released the carrier and Parker Drilling from any liability for "future development, progress and results" of Raab's right arm and shoulder problem.

At some point after the settlement agreement was approved, appellant began expe-

riencing subluxations and/or dislocations of his right shoulder. He was examined by Dr. Garner who expressed the opinion that the shoulder dislocation problem was not related to the June, 1979 incident. Raab then consulted Dr. Edward Voke who expressed the opinion that the shoulder dislocation problem was a progression of Raab's biceps injury. Dr. Voke consulted with Dr. J. Paul Dittrich who assisted Dr. Voke in operating on Raab's right shoulder to treat the dislocation problem. It was Dr. Dittrich's opinion that the shoulder dislocation problem was not related to the bicep tendon injury of June, 1979.

On March 18, 1982, Raab filed a worker's compensation claim against both Parker Drilling and RG&B Contractors, Raab's employer in July, 1981 when his shoulder dislocation problem became disabling. He asserted that his shoulder dislocation disability was a result of the injury caused by the incident of June, 1979, or was caused by his employment with RG&B. Raab later dropped his claim against RG&B Contractors and, on February 24, 1983, filed a second application for benefits naming only Parker Drilling. Raab asserted a claim for temporary total disability benefits from July 16, 1981 through the present, and asserted a claim for permanent partial disability for dates to be determined, along with medical costs and attorney's fees. Raab also requested that the AWCB set aside the compromise and release agreement executed by Raab and Parker Drilling.

A hearing was held on Raab's claim on August 17, 1983 before the AWCB. Both Raab and Dr. Voke appeared and testified. At the hearing, Dr. Voke opined that Raab's condition was the result of a tear of the rotator cuff capsule which surrounds the right shoulder joint. Dr. Voke arrived at this opinion on the morning of the hearing after a telephone consultation with a specialist at the University of Texas medical school. Neither Dr. Garner nor Dr. Dittrich testified at the hearing. Evidence of their medical opinion was submitted in the form of depositions, letters, and reports. Consequently, neither doctor was present at the hearing to respond to Dr. Voke's "rotator cuff" theory.

At the conclusion of the hearing, the parties agreed that briefs would be filed within 30 days of the hearing. On November 22, 1983, the Board entered an order denying Raab's worker's compensation claim on the basis that he did not prove by a preponderance of the evidence that his shoulder dislocation problem was related to his industrial injury of June, 1979. The Board further found that the other issues raised by the parties were moot. Raab appeals that order of the Worker's Compensation Board.

The first issue raised by appellant is whether the Board erred in its application of the statutory presumption found in AS 23.30.120(a)(1) which provides:

> In a proceedings for enforcement of a claim for compensation under this chapter it is presumed in the absence of substantial evidence to the contrary, that (1) the claim comes within the provision of this chapter ...

Appellant claims that Dr. Voke's testimony regarding the rotator cuff tear was sufficient to trigger the statutory presumption set forth above. Having established the preliminary link necessary to operation of the presumption of compensability, appellant argues that the appellees were required to come forward with evidence to overcome that presumption and that appellees failed to do so. Appellant argues that appellees were required to come forward with evidence specifically responding to the rotator cuff theory.

██ In order for the presumption of compensability contained in AS 23.30.-120(a)(1) to attach, the employee must establish some preliminary link between his disability and his employment. If a *prima facie* case of work-relatedness is made, the presumption of compensability attaches and the employer must come forward with substantial evidence that the injury was not work-related. *Burgess Construction Co. v. Smallwood,* 623 P.2d 312 (Alaska 1981). Once the employer has met his bur-

den of producing substantial evidence that the injury is not work-related, the presumption drops out, shifting the burden of proving all elements of the claim back to the employee. *Smallwood, supra.*

Under *Fireman's Fund American Companies v. Gomes,* 544 P.2d 1013 (Alaska 1976), there are two means by which the presumption of compensability can be overcome. The first means of overcoming the presumption is by affirmative evidence indicating that the alleged disability is not work-connected. The second is through evidence eliminating all reasonable possibilities that the disability was work-connected. *Id.* at 1016.

In this case, the Board found as an initial matter that appellant had established a *prima facie* relationship between Raab's June, 1979 accident and the shoulder problem he experienced from at least July 1, 1981. The Board then correctly determined that the next question was whether there was sufficient evidence presented to overcome this presumption. The Board found that there was.

In determining that the appellee had put forth sufficient evidence to overcome the presumption of compensability, the Board relied heavily on the medical evidence of Dr. Dittrich and Dr. Garner. The Board also relied on the fact that Raab had experienced no problem with his shoulder from June 27, 1979 to at least August 20, 1980 and was able to work during that period. The Board, having concluded that substantial evidence had been put forth that Mr. Raab's shoulder dislocation problem was not related to his 1979 accident, shifted the burden back to Raab to prove all the elements of his claim by a preponderance of the evidence.

After reviewing the record, I find that there is sufficient evidence from which reasonable minds could conclude that Parker Drilling has shown by substantial affirmative evidence that the shoulder dislocation problem was not work-related. As noted above, under *Fireman's Fund,* an employer need only show by a substantial affirmative evidence that a disability is not work-related in order to defeat the presumption of compensability. An employer is not also required to negate each point upon which contrary medical evidence is based in order to defeat the presumption. There is no basis for me to conclude that the Board erred in its application of the statutory presumption.

Appellant also claims that the Board erred in concluding that Raab did not prove his claim by a preponderance of the evidence. I disagree. Essentially, the Board rejected Dr. Voke's theory, finding "Drs. Garner's and Dittrich's reasoning more persuasive and more plausible given the facts of the subsequent episodes of repeated subluxations and dislocations." After reviewing the record, I find that there is substantial evidence from which the Board could conclude that Drs. Garner's and Dittrich's reasonings were more persuasive than Dr. Voke's. This evidence is summarized in appellee's brief and need not be repeated here.

Lastly, appellant argues that the bicep tendon injury "masked" the rotator cuff tear. Thus, there was a delayed diagnosis of the underlying condition. Appellant cites *Ribar v. H & S Earthmovers,* 618 P.2d 582 (Alaska 1980) as authority for the proposition that because the rotator cuff tear was "masked", he should receive the compensation requested.

*Ribar* stands for the proposition that where an industrial accident causes a delayed diagnosis of a pre-existing condition by actually concealing the symptoms of the condition or by causing confusion in the mind of the treating physician and, therefore, the condition is not appropriately treated and further injury to the employee results, the employee is entitled to benefits where the accident was a substantial factor in contributing to his condition.

I am unable to decipher from appellant's brief the basis for his reliance on *Ribar.* Raab has never contended that he was suffering from any pre-existing condition which was masked by the June 1979

injury and there was no evidence presented to that effect. Raab's theory was that the present condition occurred at the time of the accident. In any event, the Board considered the ultimate question identified in *Ribar* which was whether the June 1979 accident was a substantial factor in contributing to Raab's present shoulder dislocation problem. The Board determined that it was not. I therefore find that appellant's argument in this regard is without merit.

In conclusion, I find that appellant has failed to demonstrate that the Board erred in either applying the law or weighing the facts. The decision of the AWCB is hereby AFFIRMED. There is, thus, no reason to remand the matter to the Board for a determination of the effect of the Compromise and Release Agreement.