**FAIRBANKS NORTH STAR BOROUGH and Scott Wetzel Services, Appellants,**

v.

**ROGERS AND BABLER and Alpac/INA, Northland Maintenance, Wausau Insurance Company, and Alex Odom, Appellees.**

No. S–1596.

Supreme Court of Alaska.

Dec. 18, 1987.

Ralph R. Beistline, James Klassen, Ann Stoloff Brown, Hughes, Thorsness, Gantz,

Powell & Brundin, Fairbanks, for appellants.

Chancy Croft, Fairbanks, for appellee Odom.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, for appellees Rogers & Babler and INA.

Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Fairbanks, for appellees Northland Maintenance and Wausau Ins.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

BURKE, Justice.

In this appeal we are asked to determine which employer should be held liable for the payment of workers' compensation benefits when employment with successive employers may have contributed to the worker's resulting disability. The Workers' Compensation Board applied Alaska's last injurious exposure rule[1] to the case and determined that the worker's disability was causally related to the worker's most recent employment. Accordingly, the Board held employer, Rogers and Babler, liable for payment of the worker's disability benefits. On appeal, the superior court reversed and remanded on the grounds that the Board had failed to make certain required findings and that the determination lacked substantial evidentiary support.[2] We now affirm the Board's determination.

### I

In March, 1984, Alex Odom filed a disability claim with the Workers' Compensation Board. At the hearing on this claim, Odom showed that he first injured his right knee in 1976 while employed with Perini Arctic Associates. He reinjured the same knee in 1977 while employed with Alaska International Constructors.[3] In 1981,

---

**1.** The "last injurious exposure" rule imposes full liability for the payment of compensation benefits on the employer at the time of the worker's most recent injury which bears a causal relation to the disability. *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 595 (Alaska 1979).

**2.** The superior court decision ordered the Fairbanks North Star Borough, one of the worker's previous employers, to pay disability benefits.

**3.** Both Perini Arctic Associates and Alaska International Constructors were later dismissed from the claim for Odom's failure to file as to these two employers in a timely manner. The Board

Odom injured his left knee while working for Northland Maintenance (Northland). Odom then consulted Dr. Francis Kelly concerning his various injuries and was advised that he was suffering from torn cartilage in both knees. At the time, Dr. Kelly recommended only rest. Odom, however, did not follow the doctor's advice and went back to work. Upon his return, Northland initially gave Odom light duty, but he was eventually laid off because he "couldn't do the other work."

At Dr. Kelly's suggestion, and because both knees were bothering him, Odom did not work the following year. Evidence showed that during this year Odom was in frequent pain and that his knees were subject to occasional "lockups" and swelling. Dr. Kelly prescribed medication for these conditions and recommended surgery. Odom declined to follow the latter advice.

Odom returned to work as a laborer with Rogers & Babler in 1982. His knees continued to bother him, but the work did not appear to worsen his condition. After some time on this job, he quit because of his knee problems. Odom then went to work for the Fairbanks North Star Borough School District (Borough) as a substitute janitor. Although Odom felt at the time that this work would be easier on his knees than was the Rogers & Babler work, he later found that this was not the case. Odom's duties with the Borough required him to climb stairs, to be on his feet for extended periods, and to engage in some heavy labor, including some lifting, heaving, and pushing.

During this period of employment, Odom's knees continued to bother him and Dr. Kelly continued to recommend surgery. In December of 1982, Odom had fluid drained from his right knee. Despite this procedure, Odom worked continuously for the Borough until he was laid off at the end of the school year. Odom felt that this layoff was due to his knee problems. Shortly thereafter, Dr. Kelly scheduled surgery to repair Odom's knees. The scheduled surgery was later cancelled at Odom's request.

Odom's final employment started in June 1983 and was again with Rogers & Babler. Odom operated an asphalt machine, worked 12–14 hour days, and was required to stand while working with the machine. Odom's knees continued to bother him and were again subject to "lock-ups" and swelling. During this employment, Odom again had fluid drained from his knees. Finally, Odom's pain led him to quit this job and submit to surgery.

In finding Rogers & Babler liable for the payment of Odom's disability benefits, the Board initially determined that the evidence presented was sufficient to establish the presumption of compensability under AS 23.30.120(1), but that such presumption had been overcome by "substantial evidence" to the contrary introduced by Rogers & Babler. Even though the statutory presumption had been rebutted, however, the Board concluded that Odom's evidence was sufficient to prove that the second Rogers & Babler employment aggravated Odom's preexisting knee condition and that this aggravation was a substantial factor in causing Odom's ultimate disability. On appeal, the superior court disagreed. The court first concluded that since the Board did not make certain required findings with regard to the causal connection between the employment and Odom's disability, the presumption of compensability was not properly raised. The court then concluded that absent the presumption, there was insufficient evidence to support the Board's decision. Consequently, the superior court vacated the Board's decision, ordered the Borough to continue Odom's disability payments until liability could ultimately be determined, and remanded the matter so that the Board could determine which prior employment was the legal cause of Odom's disability. This appeal followed.

## II

We first consider the superior court's finding that the Board improperly raised the statutory presumption of compensabili-

decision to dismiss as to these two employers is  not here at issue.

ty[4] and rule that the superior court's reversal on this ground was improper.

▌ Even if a finding of fact or conclusion of law is erroneous, the mistake is not grounds for reversal if the finding or conclusion is not necessary to the court's ultimate decision. *Branco Eastern Co. v. Leffler,* 173 Colo. 428, 482 P.2d 364, 368 (1971); *Wright v. Wright,* 1 Haw.App. 581, 623 P.2d 97, 100 (1981); *Newcum v. Lawson,* 1 N.M. 448, 684 P.2d 534, 541 (App. 1984); *City of Village v. McCown,* 446 P.2d 380, 383 (Okl.1968); *State ex rel. Carriger v. Campbell Food Markets,* 65 Wash.2d 600, 398 P.2d 1016, 1020 (1965).[5] Similarly, an administrative agency ruling, even if mistaken, will not be reversed unless substantial rights of a party have been prejudiced. *Mattingly v. Charnes,* 700 P.2d 927, 929 (Colo.App.1985); *Survivors of Medeiros v. Maui Land and Pineapple Co.,* 66 Haw. 290, 660 P.2d 1316, 1319 (1983); *Excepticon Midwest, Inc. v. Kansas Department of Health,* 234 Kan. 802, 676 P.2d 107, 110 (1984). While the Board in this action did discuss the presumption and found it properly raised, it also specifically determined that Rogers & Babler had presented substantial evidence rebutting the presumption. The presumption thus "dropped out," placing the burden of persuasion upon Odom to prove all elements of his claim by a preponderance of the evidence. *Raab v. Parker Drilling,* 710 P.2d 423, 426 (Alaska 1985); *Burgess Construction v. Smallwood,* 698 P.2d 1206, 1210 (Alaska 1985). The Board subsequently found that Odom had satisfied that burden and imposed liability upon Rogers & Babler.

Because the Board thus rested its final ruling not upon the presumption, but upon its conclusion that Odom had satisfied his burden of persuasion, any finding regarding the presumption was unnecessary to the Board's ultimate ruling. Even assuming, therefore, that the Board's ruling on the presumption issue was error, it was harmless error and is not a ground for reversal.[6]

### III

▌ A major purpose of Alaska's workers' compensation scheme is to provide injured workers with a simple, speedy remedy whereby they may be compensated for losses occasioned by work related injuries. *Hewing v. Peter Kiewit & Sons,* 586 P.2d 182, 187 (Alaska 1978). In this spirit, the last injurious exposure rule provides a reasonably equitable approach to compensation problems in the multi-employer context which is simple, easy to administer, and avoids the difficulties associated with apportionment. *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 595 (Alaska 1979). The rule is not designed, however, to inequitably impose liability upon employers having no connection with the employee's disability. To ensure that the rule is not so utilized, we have indicated that liability may be imposed on a subsequent employer only after the claimant has proved by a preponderance of the evidence that the employment aggravated, accelerated, or combined with a preexisting condition and that this aggravation, acceleration or combination was a substantial factor contributing to the ultimate disability.[7] *United Asphalt Paving v. Smith,* 660 P.2d

---

**4.** AS 23.30.120(1) provides:
> In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
> (1) the claim comes within the provisions of this chapter[.]

**5.** *Cf. Loof v. Sanders,* 686 P.2d 1205, 1209 (Alaska 1984) (to prevail on appeal the appellant "must demonstrate that the error, if any, had 'substantial influence' on the outcome of the case"); *State v. Alaska Continental Development,* 630 P.2d 977, 985 n. 9 (Alaska 1980) (a legal error not based on a constitutional claim is

harmless if the factfinder is not substantially swayed or affected by the error); *Martinez v. Bullock,* 535 P.2d 1200, 1206–07 (Alaska 1975) (an error which does not affect substantial rights is harmless); *see also* Alaska R.Civ.P. 61.

**6.** We do not, of course, express any opinion as to whether the Board's treatment of this issue was in fact in error.

**7.** We assume, for the purposes of this discussion, that the employer has successfully rebutted the presumption of compensability provided in AS 23.30.120(1).

445, 447 (Alaska 1983); *Fluor Alaska, Inc. v. Peter Kiewit Sons' Co.,* 614 P.2d 310, 313 (Alaska 1980); *Saling,* 604 P.2d at 595. Although we have never before explicitly discussed the factors to be considered when determining whether an aggravation, acceleration or combination is a substantial factor in the resulting disability, in other contexts we have indicated that the substantial factor test may normally be satisfied only by a showing of both cause-in-fact and proximate cause: that the injury would not have happened "but for" an act, omission or force and that reasonable persons would regard this act, omission or force as a cause and attach responsibility to it. *E.g., Division of Corrections v. Neakok,* 721 P.2d 1121, 1135 (Alaska 1986); *State v. Abbott,* 498 P.2d 712, 726–27 (Alaska 1972).

In imposing liability upon Rogers & Babler, the Board employed the traditional cause-in-fact "but for" test to determine that the Rogers & Babler employment was a substantial factor in Odom's disability. The superior court applied this same test to come to an opposite conclusion. Both Odom and the Borough, however, now argue that the utilization of a "but for" test in the present context is contrary to precedent and hostile to the policy behind the last injurious exposure rule.[8] We disagree.

Initially, the Borough argues that the "but for" cause-in-fact test is inapplicable in the present context because there are several forces operating to bring about Odom's disability: the original injury and the subsequent aggravations. We have on many occasions recognized that when two or more forces operate to bring about an injury and each of them, operating alone, would be sufficient to cause the harm, the "but for" test is inapplicable because it would tend to absolve all forces from liability. *Yukon Equipment v. Gordon,* 660 P.2d 428, 433 (Alaska 1983); *Wilson v. City of Kotzebue,* 627 P.2d 623, 630 (Alaska 1981); *Sharp v. Fairbanks North Star Borough,* 569 P.2d 178, 181 n. 7 (Alaska 1977); *Abbott,* 498 P.2d at 726–27. The

difficulty with the Borough's argument, however, is that it fails to recognize that we are not here dealing with two independent causes each of which could have brought about Odom's disability. Rather, we are confronted with a preexisting condition and an aggravation. The exception noted above is thus inapplicable to this case because application of the "but for" test will not tend to relieve all forces from liability.

In a similar vein, Odom argues that application of the "but for" test ignores the distinction between an aggravation being *a* legal cause and an aggravation being *the* legal cause of the disability, thus nullifying the effect of the last injurious exposure rule and violating *Saling*'s mandates. Contrary to Odom's assertion, however, application of the "but for" test does not indicate *the* legal cause, but merely indicates the range of causes which may be considered legal causes. As Professors Prosser and Keeton state:

> As a rule regarding legal responsibility, [the "but for" rule] at most ... must be a rule of exclusion: if the event would not have occurred "but for" the [employment], it still does not follow that there is liability, since other considerations remain to be discussed and may prevent liability. It should be quite obvious that, once events are set in motion, there is, in terms of causation alone, no place to stop. The event without millions of causes is simply inconceivable.

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 41, at 266 (5th ed. 1984). Thus, to say that the worker's disability would not have occurred "but for" a particular period of employment is merely to say that the period of employment was a substantial factor in the resulting disability.

The Borough also argues that application of the "but for" test would make the last injurious exposure rule a nullity, because it would be "almost impossible for an employ-

---

**8.** Because the parties do not contest the applicability of the second aspect of the substantial factor test, that reasonable persons would regard the act as a cause and attach responsibility to it, we do not discuss it here. The parties' contention is only that the "but for" aspect of the test is inapplicable.

ee to prove that 'but for' an aggravation or acceleration of a preexisting condition, he would not be disabled." Where, as here, a claimant has a degenerative injury, the claimant can be expected to experience some degree of disability regardless of any subsequent trauma.[9] It can thus never be said that "but for" the subsequent trauma the claimant would not be disabled. The proof required, however, is not so difficult. Rather, the claimant need only prove that "but for" the subsequent trauma the claimant would not have suffered disability at this time, or in this way, or to this degree. In other words, to satisfy the "but for" test, the claimant need only prove, as indicated above, that the aggravation, acceleration or combination was a substantial factor in the resulting disability. We perceive no conceptual basis for supposing that the employee would have any greater difficulty in proving this element of his claim than in proving any other.

Finally, it is argued that it would be inequitable to apply the "but for" test in this context because a disabled worker could be left uncompensated for procedural reasons.[10] We reject this argument for several reasons, most importantly because it depends for its force upon the assumption that a subsequent employment which aggravates, accelerates or combines with a preexisting condition can never satisfy the "but for" cause-in-fact test. As demonstrated above, this assumption is unsupported. Furthermore, it is not clear why it would be inequitable to deny compensation

to an employee who has failed to adhere to the filing requirements of AS 23.30.-105(a).[11] We perceive no compelling reason to reward an employee who has failed to adhere to these requirements by imposing liability upon a subsequent employer having absolutely no connection with the employee's disability.

We thus embrace utilization of the "but for" cause-in-fact test in this context. We find that it provides a useful method of shielding the employer from unwarranted liability while supporting the basic precepts of Alaska's workers' compensation scheme and the last injurious exposure rule.

## IV

▮▮▮▮ Finally, we must determine whether the Board's finding that Odom had carried his burden of persuasion was error. In this regard, we note that the court's task when reviewing a Board determination is not to reweigh the evidence presented to the Board, but to determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion. *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985); *Burgess Construction v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981); *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1046 (Alaska 1978). The Board may base its decision not only on direct testimony, medical findings, and other tangible evidence, but also on the Board's experience, judgment, observations, unique or peculiar facts of the case,

---

**9.** In Alaska, a disability resulting from gradual wear and tear and activity which is in no sense unusual may be compensable. *Fox v. Alascom,* 718 P.2d 977 (Alaska 1986). Thus, our use of the term "trauma" should be understood in this broad sense.

**10.** The Borough uses this case as an illustration. *See supra* note 2 and accompanying text. Even if the argument has merit in an abstract sense, however, the argument is not applicable here because Odom suffered a primary injury while employed with Northland. The claim as to the Northland employment was timely filed.

**11.** AS 23.30.105(a) provides:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's

disability and its relation to the employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

and inferences drawn from all of the above. *Wilson v. Erickson,* 477 P.2d 998, 1001 (Alaska 1970); *Beauchamp v. Employers Liability Assurance,* 477 P.2d 993, 996 (Alaska 1970). The Board's factual findings, however, may be set aside if the reviewing court cannot conscientiously find that the evidence supporting the decision is substantial when viewed in light of the entire record, including the evidence opposed to the Board's decision. *Delaney,* 693 P.2d at 863–64 n. 2.

■ With these principles in mind, we find that there was substantial evidence supporting the Board's determination. The evidence specifically relied upon by the Board included: (1) Odom's testimony that he was required to work 12–14 hours per day for Rogers & Babler; (2) Dr. Kelly's testimony that virtually any physical activity could aggravate Odom's knee condition; (3) Odom's testimony that his knee condition did in fact worsen while employed by Rogers & Babler; (4) the fact that Odom had fluid drained from his knee while employed by Rogers & Babler; and (5) the fact that it was only after his second Rogers & Babler employment that Odom finally submitted to surgery. In determining that this was not substantial evidence, in light of the whole record, to support the Board's decision, the superior court noted (1) that Odom had a preexisting knee injury which could have resulted in disability even without any further aggravation; (2) that Dr. Kelly's testimony was inconclusive as to whether the employment aggravated the knee injury; (3) that Odom's knee condition progressively degenerated from the date of the original injuries; and (4) that Odom had been urged, prior to the Rogers & Babler employment, to submit to surgery.

The evidence cited by the superior court does nothing to detract from the substantiality of the evidence relied upon by the Board. There is no question but that Odom was suffering from a preexisting condition and that this condition was serious and potentially debilitating. An employee's preexisting condition will not, however, relieve an employer from liability in a proper case. *Saling,* 604 P.2d at 596. In-

deed, this is the very purpose of the last injurious exposure rule. Thus, the question before the Board was not whether Odom had such a condition, but whether his most recent employment aggravated this knee condition and, if so, whether that aggravation was a substantial factor in his resulting disability. *Id.*

■ Although Dr. Kelly's testimony was inconclusive, it should be remembered that uncontroverted, yet inconclusive, medical evidence is to be interpreted in the employee's favor. *Land & Marine Rental v. Rawls,* 686 P.2d 1187, 1190 (Alaska 1984); *Kessick v. Alyeska Pipeline Service Co.,* 617 P.2d 755, 758 (Alaska 1980). In addition, aggravation of a preexisting condition may be found absent any specific traumatic event. *Providence Washington Insurance v. Bonner,* 680 P.2d 96, 99 (Alaska 1984). The Board's finding of aggravation was thus supported by both Dr. Kelly's and Odom's testimony and inferentially by the nature of Odom's work with Rogers & Babler. This evidence was uncontradicted. The Board's finding that the disability would not have occurred "but for" the employment is supported not only by Dr. Kelly's testimony, but inferentially from the fact that Odom had been able to continue working despite pain prior to the Rogers & Babler employment but required surgery after that employment. The Board's finding that reasonable persons would find that the Rogers & Babler employment was a cause of Odom's disability and impose liability is, as are all subjective determinations, the most difficult to support. We have no reason for supposing, however, that the members of the Board who found it so are either irrational or arbitrary. The fact that some reasonable persons may disagree with a subjective conclusion does not necessarily make that conclusion unreasonable and we cannot say that it is so in this case.

## V

For the reasons outlined above, the decision of the superior court is REVERSED and that of the Workers' Compensation Board imposing liability upon Rogers &

Babler for Alex Odom's disability payments is AFFIRMED.

MOORE, J., not participating.