Lee A. BROWN, Appellant,

v.

STATE of Alaska, ALASKA WORKERS' COMPENSATION BOARD, and the University of Alaska Fairbanks, Appellees.

No. S-7315.

Supreme Court of Alaska.

Feb. 7, 1997.

Michael A. Stepovich, Stepovich Law Office, Fairbanks, for Appellant.

Ann S. Brown and Brad E. Ambarian, Lane, Powell, Spears, Lubersky, Fairbanks, for Appellee University of Alaska Fairbanks.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Lee Brown appeals a superior court ruling upholding a decision by the Alaska Workers'

Compensation Board to terminate his workers' compensation benefits. Brown claims that the Board erred when it (1) rejected the opinion of the Board-appointed independent medical examiner, (2) determined that Brown was medically stable, and (3) concluded that Brown was not entitled to continuing medical benefits. We affirm the superior court's decision.

## II.  *FACTS AND PROCEEDINGS*

On May 13, 1991, Lee Brown began working for the University of Alaska (University) as a Boiler Firer I (or Fireman I, according to Brown). Brown was responsible for operations in the University's power plant. Before his employment began, he suffered from spondylosis, a degenerative condition of the cervical spine. On January 7, 1992, the University notified Brown that he would be terminated effective January 17, 1992.

On January 12, 1992, Brown allegedly injured his neck when what he describes as a thirty to forty-pound ash rake fell on his neck and shoulders as he worked on his knees. No witnesses observed the accident, and Brown did not immediately report it. The next day, Brown went to the emergency room of Fairbanks Memorial Hospital. He did not return to work after the alleged injury.

The University disputes all of Brown's allegations. It maintains that Brown could not have been on his knees doing the work he claims he was doing, that the rake weighed much less than Brown claims, and that "[t]he accident with the [ash rake] never happened."

On January 15, 1992, Brown filed an injury report with the Board. Shortly thereafter, the University began paying Brown temporary total disability compensation. However, on March 11, 1992, the University had a telephone conversation with Brown that prompted it to conclude that his injury was "a temporary aggravation and ha[d] ceased." Therefore, on March 13 the University controverted all benefits to Brown after March 11.

On April 29 Brown formally applied for temporary total disability payments based upon the alleged January 12th injury. The University responded to that application by asserting that Brown had suffered a temporary aggravation of a preexisting condition but had returned to his preinjury status because the aggravation had ceased.

At the Board's hearing relating to Brown's temporary total disability claim, the parties offered testimony of several physicians who had examined Brown or his records. The physicians' opinions differed considerably about the nature and extent of Brown's physical condition, whether his condition was linked to the alleged January 12th injury, and whether he was capable of returning to work in March 1992.

In light of these significant differences in the physicians' opinions, the Board appointed an independent medical examiner under AS 23.30.095(k). The version of that statute effective in 1994 compelled the Board, in the event of a "medical dispute," to appoint an independent medical examiner.[1] The independent medical examiner examined Brown in January 1994 and concluded that Brown had suffered a significant injury on January 12, 1992 from a blow that aggravated his

---

1. The then-applicable version of AS 23.30.095(k) read:

   In the event of a medical dispute regarding determinations of causation, medical stability, ability to enter a reemployment plan, degree of impairment, functional capacity, the amount and efficacy of the continuance of or necessity of treatment, or compensability between the employee's attending physician and the employer's independent medical evaluation, a second independent medical evaluation shall be conducted by a physician or physicians selected by the board from a list established and maintained by the board. The cost of the examination and medical report shall be paid by the employer. The report of the independent medical examiner shall be furnished to the board and to the parties within 14 days after the examination is concluded. A person may not seek damages from an independent medical examiner caused by the rendering of an opinion or providing testimony under this subsection, except in the event of fraud or gross incompetence.
   Ch. 79, § 18, SLA 1988.
   A 1995 amendment changed the language of AS 23.30.095(k). Now the Board may require an independent medical examination at its discretion. AS 23.30.095(k).

degenerative spinal condition. He found that Brown neither recovered to his preaccident condition nor reached medical stability until May 1992. He attributed Brown's symptoms occurring after that date to chronic pain syndrome because, he opined, they were psychological rather than "anatomic."

The Board determined that Brown suffered an injury at work on January 12, 1992 that aggravated his preexisting condition. However, the Board also found that the aggravation was temporary and that any impairment after March 11, 1992 was solely the result of his preexisting condition. Therefore, the Board denied Brown's claims for any benefits after March 11, 1992.

Brown appealed the Board's decision to the superior court and argued that the Board erred by (1) rejecting the opinion of the independent medical examiner, (2) determining that Brown was medically stable by March 11, 1992, and (3) concluding that Brown was not entitled to continuing medical benefits. The superior court found that the Board's decision was supported by substantial evidence. That court noted that although the Board had rejected the testimony of certain physicians, including the independent medical examiner, it had agreed with the opinions of others. Therefore, the superior court affirmed the Board's decision. Brown appeals that decision.

## III. STANDARD OF REVIEW

We give no deference to the decision of the superior court because that court acted as an intermediate court of appeal. *Municipality of Anchorage, Police & Fire Retirement Bd. v. Coffey*, 893 P.2d 722, 725–26 (Alaska 1995).

Brown's first claim requires us to examine whether the Board correctly concluded that Alaska law does not require it to adopt the opinion of the independent medical examiner. Because that is a question of law involving no

Board expertise, we apply the "substitution of judgment" test. *Id.* at 726.

Brown also asks us to review the Board's finding that Brown was medically stable and not entitled to continuing benefits after March 11, 1992. We review the Board's interpretation of the term "medical stability" in AS 23.30.265(21) under the "reasonable basis" standard because it concerns a question of law involving Board expertise. *Id.* However, we review the Board's factual determination that Brown was medically stable and not entitled to continuing medical benefits according to the "substantial evidence" test. *Id.*

## IV. DISCUSSION

### A. Alaska Law Does Not Compel the Board to Adopt the Opinion of the Independent Medical Examiner.

■ Brown argues that Alaska law compels the Board to adopt the opinion of the independent medical examiner. To support this assertion, Brown cites *Bode v. Alaska Memorial Servs., Inc.*, Alaska Workers' Compensation Board Decision 93–0113, Case No. 9000016 (May 7, 1993). Brown maintains that the Board erred in failing to adopt the independent medical examiner's finding "that Mr. Brown continues to suffer symptoms due to chronic pain syndrome." We disagree.

As we noted previously, the Board appointed the independent medical examiner pursuant to AS 23.30.095(k). The version of that statute effective in 1994 mandated that "[i]n the event of a medical dispute ... [an] independent medical evaluation shall be conducted by a physician or physicians selected by the board" and that "the report of the independent medical examiner shall be furnished to the board." Ch. 79, § 18, SLA 1988. However, no part of that statute required the Board to rely upon the independent examiner's report when it resolved the medical dispute.[2]

---

**2.** Moreover, *Bode* does not hold that the Board must adopt the independent medical examiner's opinion. In fact, in *Bode* the Board declined to adopt the independent medical examiner's opinion completely: "We find that absent the inclinometer measurements, we cannot give full weight to [the independent medical examiner's] impairment rating." *Bode* at 6. In *Bode* the

Board found that under Alaska law it may base its decision on select parts of each medical report. The Board found "each of the three physician's impairment ratings deficient in some respects," and it concluded that there was no requirement in Alaska law "that we must base a determination of permanent impairment solely on the rating of one physician.... In some

We conclude that Alaska law does not require the Board to adopt the report of the independent medical examiner.

### B. The Board Did Not Err in Finding that Brown Was Medically Stable on March 11, 1992.

Brown also claims that the Board erred in finding that he was medically stable. He apparently argues that the Board made either an error of law when it interpreted the statutory definition of "medical stability" or an error of fact in finding that Brown met that definition. We disagree with both arguments.

#### 1. The Board did not make an error of law when it interpreted the statutory definition of medical stability.

Alaska Statute 23.30.185 provides that "[t]emporary total disability benefits may not be paid for any period of disability occurring after the date of medical stability." Alaska Statute 23.30.265(21), in turn, defines "medical stability" as "the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment."

Although the Board did not use the term "medical stability," it concluded that Brown was no longer eligible for temporary total disability benefits after March 11, 1992 because medical testimony demonstrated that, after that date, Brown "was neither disabled by the neck injury of January 12, 1992 . . . nor in need of medical treatment of that injury." It attributed any symptoms experienced by Brown after March 11 to Brown's preexisting spondylosis.

Alaska Statutes 23.30.185 and .265(21) state that temporary total disability benefits must end when the employee reasonably cannot be expected to demonstrate an "objectively measurable improvement *from the effects of the compensable injury.*" AS 23.30.185, .265(21) (emphasis added). Because the Board determined that Brown was no longer suffering any effects attributable to the January 12, 1992 accident, we conclude that the Board's decision was consistent with the statutory definition of medical stability.

#### 2. The Board did not make an error of fact when it determined that Brown was medically stable.

Whether the Board was correct to conclude that by March 11, 1992 Brown needed no further treatment as a result of the January 12th injury is a question of fact. Where the Board chooses one of two conflicting medical opinions before it, each of which constitutes substantial evidence, a reviewing court should affirm the Board's decision. *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1049 (Alaska 1978).

In this case, two physicians testified that in February 1992 Brown needed no further treatment for the January 12th injury.[3] The Board expressly relied upon those two physicians' opinions when it found "that [Brown] was neither disabled by the neck injury of January 12, 1992 after March 11, 1992 nor in need of medical treatment of that injury after March 11, 1992 as claimed."[4] Therefore, the Board's conclusion is supported by substantial evidence.

### C. The Board Did Not Err in Finding that Brown Is Not Entitled to Continuing Medical Benefits.

Brown argues in the alternative that, even if he was medically stable in 1992, he

cases, such as this one, the final rating may require us to combine the analysis of more than one of the rating physicians." *Id.* at 7 & n. 2.

3. One physician concluded that the effects of Brown's January 12, 1992 injury did not continue after February 1992 and that Brown could return to work at that time. The other physician stated that any of Brown's symptoms that persisted beyond 10 to 14 days after the injury were the results of Brown's preexisting degenerative spine condition.

4. The Board's decision focused on March 11, 1992 because the University argued that Brown was not entitled to TTD benefits after that date. Because an employee is not entitled to TTD benefits after the date of medical stability, AS 23.30.185, the Board did not need to concern itself with the specific date of medical stability so long as it occurred on or before March 11, 1992.

remains entitled to benefits. Brown apparently asserts that because his work-related injury aggravated a preexisting condition, he is entitled to compensation for medical costs while that condition persists. We disagree.

We have required compensation when a work-related injury "aggravated, accelerated, or combined with a prior condition in such a way that it may be said to be a substantial factor in bringing about the employee's current inability to work." *Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1161 (Alaska 1993).

However, in this case there is substantial evidence to support the Board's conclusion that the January 12th injury was not a substantial factor contributing to Brown's disability after March 11, 1992. As indicated above, the record shows that two physicians opined that Brown had recovered from the effects of the January injury by March 11, 1992. The Board expressly relied upon that testimony when it concluded "that continuing degenerative changes attributable to the employee's preexisting spondylosis (rather than the January 12, 1992 injury ... or chronic pain syndrome as opined by [the independent medical examiner]) caused any disability or need for medical treatment after [March 11, 1992]." As noted earlier, we will not disturb the Board's decision to choose to rely on one medical opinion rather than another. *Miller v. ITT Arctic Servs.,* 577 P.2d 1044, 1049 (Alaska 1978). Thus, we conclude that the Board did not err in denying Brown continuing medical benefits.

## V. CONCLUSION

We conclude that Alaska law does not require the Board to rely upon the opinion of a Board-appointed independent medical examiner. We also conclude that the Board did not err when it determined that, after March 11, 1992, Brown was medically stable and no longer entitled to temporary total disability benefits. Therefore, we AFFIRM the decision of the superior court.