**Vyron C. WELLS, Petitioner,**

v.

**SWALLING CONSTRUCTION COMPA-NY, INC., and Wausau Insurance Company, Respondents.**

**No. S–7509.**

Supreme Court of Alaska.

Aug. 15, 1997.

---

Joseph A. Kalamarides, Kalamarides & Associates, Anchorage, for Petitioner.

Robert J. McLaughlin, Mann, Johnson, Wooster & McLaughlin, P.S., Tacoma, WA, for Respondents.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

At issue in this petition for review is the rate at which the petitioner, Vyron C. Wells, is entitled to receive workers' compensation

benefits. The Alaska Workers' Compensation Board (Board) determined that Wells's benefits should be calculated based on an injury he suffered to his right knee in 1986. The superior court, rejecting the Board's application of the last injurious exposure rule, reversed the Board, determining that Wells should receive a lower benefit rate based on an injury to his left knee in 1989. We reverse the superior court, holding that although the last injurious exposure rule does not apply, the Board did not err in determining that Wells is entitled to benefits at the rate established for his 1986 injury.

## II. FACTS AND PROCEEDINGS

Wells suffered five on-the-job injuries while working for Swalling Construction Co., Inc., between 1957 and 1989. The details of the last two injuries, one to each knee, are the key facts in this case. In April 1986 Wells injured his right knee when he stepped into a hole and fell. To treat this injury, his physician, Dr. David E. Karges, attempted to decompress the knee cap joint by removing a piece of the patella. After recovering from the surgery, Wells returned to work without restriction in December 1987. However, in an examination seven months after the surgery, Dr. Karges noted that the knee remained symptomatic.

In September 1989 Wells tripped and injured his left knee. He again went to Dr. Karges for treatment. Dr. Karges diagnosed the knee as "sprained with possible minimal avulsion of the quadriceps tendon." While seeing Dr. Karges about the left knee, Wells spoke with him about continuing problems with the right knee. Dr. Karges concluded that the surgery he performed on Wells's right knee in 1987 "hadn't really helped him that much." On October 12, 1989, Dr. Karges performed a total replacement of the right knee. He also performed diagnostic arthroscopy of Wells's left knee, but did not provide any treatment for it. He testified at his deposition that while the arthroscopy of the left knee revealed "early arthritic changes", there was "no evidence of any mechanical or ligamentous problem." Wells did not return to work after his knee replacement operation.

After the initial operation on Wells's right knee, Swalling Construction and Wausau Insurance Co. (collectively, Swalling Construction), compensated Wells at a temporary total disability rate of $885.20 per week for about thirty-three weeks in 1987 and about twelve weeks in 1989. After the total replacement of the right knee, Swalling Construction terminated payments based on the 1986 injury and began making payments of $562.49 per week based on the temporary total disability rate for the 1989 injury. Wells filed applications with the Board for adjustment of his claim to "establish the correct compensation rate" for his disability.

Before the Board, Wells argued that his disability was caused by the 1986 injury, while Swalling Construction argued that it was caused by the 1989 injury. The Board, applying the "last injurious exposure rule," ruled in favor of Wells. After determining that Wells had rebutted the presumption that his disability was caused by the 1989 injury, the Board concluded that Swalling Construction failed to "prove[ ] all elements of its claim by a preponderance of the evidence" and ordered Swalling Construction to pay benefits "as they existed on April 30, 1986." It also ordered Swalling Construction to pay Wells's attorney's fees and costs.

Swalling Construction appealed. The superior court reversed the Board's decision and remanded for redetermination of attorney's fees. The superior court concluded that the Board erred in determining that Wells had successfully rebutted the presumption that his disability was caused by the 1989 injury. It also determined that the Board incorrectly applied the last injurious exposure rule. Wells petitioned to this court for review.

## III. DISCUSSION [1]

The issue in this case is whether Wells will receive disability benefits based on

---

1. We review the Board's rulings on questions of law using our independent judgment and review its factual determinations to determine if they are supported by substantial evidence. *Cluff v. Nana–Marriott*, 892 P.2d 164, 168 n. 3 (Alaska 1995). We give no deference to the superior

his 1986 injury or his 1989 injury. If his benefit rate is based on the 1986 injury, that rate will be governed by the version of the workers' compensation laws in effect prior to the 1988 amendments and computed according to Wells's higher earnings during 1985 and 1986. If his benefit rate is based on the 1989 injury, it will be governed by the law in effect in 1989 and computed according to his lower earnings in 1987 and 1988.[2]

The Board and the superior court analyzed this dispute by applying the "last injurious exposure rule." The last injurious exposure rule, announced in *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590 (Alaska 1979), imposes full liability for a disability on the employer at the time of the most recent injury that bears a causal relation to the disability. *Saling*, 604 P.2d at 595; *see also Parker Drilling Co. v. Wester*, 651 P.2d 842, 843–44 (Alaska 1982) (applying the rule to successive insurers). By adopting this rule, we sought to avoid the problems of "apportionment," the frequently complex and lengthy process of dividing liability among successive employers. *Saling*, 604 P.2d at 598.

Apportionment unfairly places the burden of adjusting each employer's share of the liability on the disabled employee rather than the parties actually disputing the successive employers or insurers. *See id.; see also Providence Washington Ins. Co. v. Bonner*, 680 P.2d 96, 100 (Alaska 1984) (Rabinowitz, J., concurring). It also may prevent workers from receiving adequate compensation when previous insurers or employers are outside the state or insolvent. 4 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 95.12, at 17–155 & n. 9 (1996). However, in cases not involving successive employers or insurers, these concerns are irrelevant.

Moreover, imposing the rule in such cases would be less equitable than it was in *Saling*. In *Saling*, we recognized that "[i]n many cases [the rule] will operate to impose a disproportionately higher burden of liability upon the last employer." 604 P.2d at 598. We also noted, however, that "[t]he rule will operate in those same cases to create a windfall to previous employers," *id.*, and that employers may be partially reimbursed by the second injury fund [3] for the increased liability caused by "the combined effects of the preexisting condition and the subsequent work-related aggravation." *Id.* at 597. Applying the rule in this case, and thus arbitrarily basing Wells's benefit rate on his last injury, would impose inequities on Wells similar to those imposed on successive employers, as discussed in *Saling*. However, workers like Wells, in contrast to successive employers, can neither receive a "windfall" nor apply for reimbursement from the second injury fund.

In light of these considerations, we conclude that the last injurious exposure rule is not applicable to cases involving disabilities caused by successive injuries if the employer and the insurer are the same at the time of the relevant injuries. While application of the rule in such cases might provide simplicity of administration and help workers obtain "a swift and inexpensive recovery," the inequities inherent in such an application of the rule outweigh any benefits. *See id.* at 597–98. Therefore, we hold that it was error for the Board and the superior court to apply the rule in this case.

Despite this error, the Board properly applied the "substantial factor" test to resolve the question whether Wells should receive compensation based on his 1989 injury or his 1986 injury. The parties agree that the benefit rate should be calculated based on Wells's earnings at the time of either the 1986 or the 1989 injury. This is in accordance with the provisions in the Alaska Workers' Compensation Act that "spendable weekly wage" and hence, weekly benefit rate,

---

court acting as an intermediate court of appeal. *Brown v. State, Workers' Compensation Bd.*, 931 P.2d 421, 423 (Alaska 1997).

**2.** The parties assume that this is the correct analysis, and we therefore do not address its merits.

**3.** The second injury fund is established and administered under AS 23.30.040 and AS 23.30.205.

must be computed with reference to the employee's earnings at "the time of injury." AS 23.30.220(a). Although the act does not specify which injury in a series of injuries should be the basis for the rate calculation, we conclude that the injury used for this purpose must, at a minimum, be a legal cause of the disability.[4] This conclusion is supported by the act's definition of "disability" as the "incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.395(10) (emphasis added). Furthermore, there would be no reason to assign such importance to the date of an injury that was not a legal cause of the compensable disability.

For a causal factor to be a legal cause, it must be a substantial factor in bringing about the harm. *Fairbanks N. Star Borough v. Rogers & Babler,* 747 P.2d 528, 532 (Alaska 1987). Thus, an injury is not a legal cause of a disability unless the disability would not have happened "but for" the injury and reasonable persons would regard the injury as a cause and attach responsibility to it. *See id.* This is the "substantial factor test" the Board ultimately used to determine that the 1989 injury was not a legal cause of the disability. Therefore, the Board's error in applying the extra analytical steps of the last injurious exposure rule was harmless. *See id.,* at 530–31 (holding that the Board's error in discussing the statutory presumption of compensability was harmless because the presumption "dropped out" of the analysis once the Board found the presumption rebutted).

Having decided that the Board applied the proper test, we turn to Swalling Construction's alternative argument that the Board's decision was not supported by substantial evidence.[5] The only medical testimony before the Board was the deposition of Dr. Karges. Swalling Construction relies largely on Dr. Karges's affirmative response to the following question by Swalling Construction's counsel:

> When you look at the entire patient, not just the component parts, would you agree with the following statement: That the left knee problem when combined with the right knee problems, the right shoulder problems and the right foot problems, that all of those combine to make him disabled from his construction work?

Dr. Karges also agreed that the "combination of factors is a substantial, that's an important or significant, reason for his disability." However, contrary to Swalling Construction's assertions, these statements do not indicate that Dr. Karges believed that the injury to Wells's left knee was a substantial factor in causing the disability; they indicate merely that he thought that all of Wells's injuries combined, including the injury to his right knee, were a substantial factor in his disability. This testimony is thus entirely consistent with a belief that the injury to the left knee by itself was not a substantial factor in causing the disability. *See United Asphalt Paving v. Smith,* 660 P.2d 445, 447 (Alaska 1983) (stating that although subsequent injury aggravated pre-existing injury, the later injury was not necessarily a substantial factor in causing disability).

Indeed, Dr. Karges's testimony supports the Board's finding that the injury to the left knee was not a substantial factor. He stated that at the time of the total knee replacement, Wells's left knee showed "no evidence of any mechanical or ligamentous problem." Dr. Karges also stated that he "would have to honestly say that if he had nothing else going on that he might well work with [the left knee injury]." And Dr. Karges agreed that the left knee injury "in and of itself would not be the type of injury that would necessarily end someone's construction career." Moreover, Dr. Karges focused on the right knee injury and subsequent total knee

**4.** We do not reach the issue of which injury should be used for the calculation when more than one injury is a substantial factor in the disability.

**5.** Swalling Construction also challenges the Board's conclusion that Wells successfully rebut-

ted the statutory presumption of compensability and its application of the substantial factor test in the context of the last injurious exposure rule. Because we decide that the last injurious exposure rule does not apply to this case, we need not address these arguments.

replacement as the cause of Wells's disability. For example, counsel for Wells asked Dr. Karges if Wells could perform work in which he would be required "to be on uneven ground, slippery ground, icy ground, going up and down ladders, overhead work, bending, doing things on his knees, twisting his body, carpentry work, pile driving, operating small machinery and labor work." Dr. Karges responded that "[a]fter [Wells] had his total knee he should not do those things."

This undisputed testimony provides substantial evidence to support the Board's conclusion that the injury to Wells's left knee is not a legal cause of his disability. Therefore, we affirm the Board's order that Swalling Construction must pay Wells his "benefits as they existed on April 30, 1986, the date he injured his right knee." [6]

## IV. CONCLUSION

For the above reasons, we hold that the Board did not err in determining that Wells's workers' compensation benefit rate should be calculated based on his 1986 injury to his right knee. Therefore, we REVERSE the decision of the superior court and REMAND with the order to reinstate the decision of the Board.

**6.** Swalling Construction does not dispute that the Board, in light of its decision, properly awarded Wells attorney's fees and costs. Therefore we also affirm that portion of its order.