*688 OPINION OF THE COURT
Charles J. Markey, J.
The novel issue raised in this “serious injury’ case, under Insurance Law § 5102 (d), is whether the device of an inclinometer is one that can provide objective measurements of a limitation of motion so as to permit a plaintiff to survive a defense threshold motion.
Defendant moves for summary judgment dismissing the complaint regarding a motor vehicle accident that occurred in Queens County on May 6, 2001.
Contrary to the plaintiffs allegations, defendant’s two experts offered reports in admissible form contending that plaintiff did not sustain a serious injury (see, Gaddy v Eyler, 79 NY2d 955, 956-957 [1992]; Pech v Yael Taxi Corp., 303 AD2d 733 [2d Dept 2003]; Khalil v Morris, 304 AD2d 530 [2d Dept 2003]; Torres v Szafranski, 304 AD2d 559 [2d Dept 2003]; Torre v Seckel, 303 AD2d 673 [2d Dept 2003]; Brush v Levy, 303 AD2d 536 [2d Dept 2003]; Arrowood v Lowinger, 294 AD2d 315 [1st Dept 2002]; Grant v Heli Trucker, 294 AD2d 538 [2d Dept 2002]; Wiegand v Schunck, 294 AD2d 839 [4th Dept 2002]; Castaldo v Migliore, 291 AD2d 526 [2d Dept 2002]; Greggs v Kurlan, 290 AD2d 533 [2d Dept 2002]; Trotter v Hart, 285 AD2d 772 [3d Dept 2001]; Sauer v Marks, 278 AD2d 301 [2d Dept 2000]; Toriola v Hyun, 186 Misc 2d 590 [App Term, 2d Dept 2000]).
Plaintiff contends that he ought to be permitted to go to trial under two categories of section 5102 (d), namely, a “permanent consequential limitation of use of a body organ or member” and a “significant limitation of use of a body function or system.”
First, defendant relies on the “gap in treatment defense,” contending that plaintiff failed to seek treatment for a period of 17 months (see, e.g., Crespo v Kramer, 295 AD2d 467 [2d Dept 2002] [five-year gap in treatment]; Taylor v Jerusalem Air, 280 AD2d 466 [2d Dept 2001], lv denied 96 NY2d 716 [2001] [2x/2-year gap]; Pierre v Nanton, 279 AD2d 621 [2d Dept 2001]; Paulino v Dai, 279 AD2d 619 [2d Dept 2001] [three-year gap]; Betheil-Spitz v Linares, 276 AD2d 732 [2d Dept 2000] [three-year gap]; Slasor v Elfaiz, 275 AD2d 771 [2d Dept 2000] [2x/2-year gap]; Reynolds v Cleary, 274 AD2d 509 [2d Dept 2000] [four-year gap]; Villalta v Schechter, 273 AD2d 299 *689 [2d Dept 2000] [four-year gap]; Borino v Little, 273 AD2d 262 [2d Dept 2000], lv denied 96 NY2d 704 [2001] [31/2-year gap in treatment]; Kim v Budhu, 273 AD2d 204 [2d Dept 2000] [21-month gap in treatment]; Lauretta v County of Suffolk, 273 AD2d 204 [2d Dept 2000], lv denied 95 NY2d 770 [2000]; Grossman v Wright, 268 AD2d 79, 84 [2d Dept 2000]; Carroll v Jennings, 264 AD2d 494 [2d Dept 1999] [almost four-year gap]).
The court believes that where a plaintiff contends that he has a permanent consequential limitation of a body organ or member, application of the “gap in treatment” defense makes little sense. Analytically, if a plaintiff’s restriction is deemed by a competent health care provider to be permanent in nature, it makes little sense for an injured person to keep doling out money for physical therapists and other practitioners when a cure has been described as basically hopeless or unavailing. In the present case, Dr. Frank D. Cohen, a chiropractor, attests that plaintiff has sustained a 75% limitation in cervical extension that is permanent. If believed by a jury, such a restriction should not be tossed out on a summary judgment motion because the plaintiff sought treatments for only four months following the accident.
Dr. Cohen states that he performed range of motion studies using “a computerized inclinometer.” Defense counsel argues that the operations of the inclinometer are susceptible to a plaintiff’s manipulations and exaggerations of subjective pain and, therefore, such a device should not be recognized by this court.
Whether a plaintiff can feign a restriction of motion on a “computerized inclinometer” and thereby manipulate and fabricate the results is not clear to this court. In Kraemer v Henning (237 AD2d 492, 493 [2d Dept 1997]), the Appellate Division, Second Department, indeed, held that a test of cervical and lumbar range of motion, showing restricted movement, performed using a “Gybes EDI 320 Inclinometer” raised a triable issue of fact on the issue of “significant limitation” of use of a body organ or system. Kraemer is the only reported New York decision on this device to measure a plaintiffs allegations of injuries.
The Appellate Division’s opinion in Kraemer, however, is supported by other federal and state court decisions that have approved of an inclinometer to test an alleged restriction of motion to the cervical and lumbosacral regions of the spine (see, Hatcher v Apfel, 167 F Supp 2d 1231, 1235 [D Kan 2001] [measurements of the flexion and extension of the lumbosacral *690 spine were taken using an inclinometer]; Brown v State, 931 P2d 421, 423 n 2 [Alaska 1997]; Metro Moving & Stor. Co. v Gussert, 914 P2d 411, 413, 415 [Colo App 1995] [use of an inclinometer is recommended by American Medical Association Guides]; Allstate Ins. Co. v Orthopedic Evaluations, 300 NJ Super 510, 513, 693 A2d 500, 501 [App Div 1997], cert granted and cause remanded 151 NJ 67, 697 A2d 541 [1997], on remand 304 NJ Super 278, 700 A2d 372 [1997] [adhering to original determination]; McCabe v North Dakota Workers Compensation Bur., 1997 ND 145, 567 NW2d 201, 204 n 3 [1997]; Matter of Snyder v Barrett Bus. Servs., 147 Or App 619, 622, 939 P2d 47, 48 [1997]; see also, Elmore v Travelers Ins. Co., 824 SW2d 541 [Tenn 1992] [upholding trial court’s evidence ruling despite challenge that doctor failed to use inclinometer to measure range of motion]; but see, Vitale v Apfel, 49 F Supp 2d 137, 140, 143 [ED NY 1999] [results of range of motion “utilizing a computerized inclinometer” were properly discounted because the tests were performed 13 years after the accident]; Witty v United States, 947 F Supp 137, 144 [D NJ 1996] [doctor who used inclinometer did not state that the injuries were permanent]).
In the case at bar, to the extent that defense counsel, at trial, wants to explore the issues associated with the use of an inclinometer (i.e., the various types of inclinometers, the ability of patient to fabricate, exaggerate, or manipulate its results, etc.), he is free to do so by presenting experts and other admissible proof. For example, one article written by a federal administrative law judge comments: “In using reproducibility of a test result, an examiner may look to see if a critical measurement [i.e., the use of an inclinometer to measure range of motion] varies from one test to another by five degrees or plus or minus 10 percent on consecutive measurements” (Foley, Malingering? Or More than Meets the Eye?, NCATL TRIAL Briefs Magazine [Nov. 1999], 1999 WL 33504641; see also the interesting discussions in two articles written by Professor Ellen Smith Pryor, Compensation and the Ineradicable Problems of Pain, 59 Geo Wash L Rev 239, 252 n 60 [1991], and Flawed Promises: A Critical Evaluation of the American Medical Association’s Guides to the Evaluation of Permanent Impairment, 103 Harv L Rev 964, 974 [1990]).
The motion for summary judgment is thus granted only to the extent of dismissing the “permanent loss of use” and “90/180-day” categories of Insurance Law § 5102 (d). This *691 case should be tried on the categories of “permanent consequential limitation” and “significant limitation.” There are several issues that ought to be determined by a jury with regard to those two categories (see, Corbett v County of Onondaga, 291 AD2d 886 [4th Dept 2002]; Pagels v P.V.S. Chems., 266 AD2d 819 [4th Dept 1999]; Johnson v Baker, 2002 NY Slip Op 50103[U] [App Term, 1st Dept, Mar. 19, 2002]).