■ DAVID G. BROWN, Appellant, v ATHENA D. DUNLAP et al., Respondents. [774 NYS2d 147]—

Order, Supreme Court, New York County (Milton Tingling, J.), entered June 7, 2002, which granted defendants' motion and cross motion for summary judgment dismissing the complaint, and denied as moot plaintiff's cross motion for partial summary judgment on the issue of "serious injury" under the No-Fault Law, affirmed, without costs.

Defendants amply met their burden to establish a prima facie case that the subject accident did not cause plaintiff a "serious injury" within the meaning of Insurance Law § 5102 (d). Affirmed reports of defendants' examining orthopedists and neurologists were presented, each of which set forth a detailed finding that plaintiff was not suffering from any serious injury. In addition, the radiologist retained by the Trucklease defendants examined an MRI of plaintiff's lumbar spine, which was taken two months after the subject accident, and, in an affirmed report, opined that the MRI showed only "[d]isc dessication and a minimal diffuse disc bulge . . . at L5-S1." According to the radiologist, this abnormality was "chronic and degenerative in origin," and had not been caused by the subject accident, since "no evidence of acute traumatic injury to the lumbar spine" appeared on the MRI. Further, a report by the neurologist to whom plaintiff had been referred by his treating physician, based on an examination the neurologist conducted only three months after the accident, set forth the following findings concerning plaintiff's cervical spine: "Nontender. No spasm. Range of motion was full in the horizontal and vertical plane."

In the face of defendants' well-supported motion and cross motion for summary judgment, the medical evidence plaintiff submitted in opposition was inadequate. Plaintiff offered the affirmation of his treating physician, Dr. Melamed, based on an examination conducted on April 22, 2002, nearly three years after the accident, to which was attached Dr. Melamed's unsworn report of September 23, 1999, a date three months after the accident. The affirmation of Dr. Melamed (whose area of specialization the record does not reveal) sets forth purported measurements of loss of range of motion, but fails to explain the objective tests, if any, that were performed to derive such measurements (see *Villalta v Schechter*, 273 AD2d 299, 300 [2000]), leading one to conclude that Dr. Melamed relied upon plaintiff's subjective complaints of pain, which are insufficient to avoid summary judgment (*id.*). The affirmation also fails to

set forth any basis for Dr. Melamed's conclusion that the restricted range of motion he purportedly found in April 2002 was caused by the subject accident nearly three years before (*compare Pommells v Perez*, 4 AD3d 101 [2004]). Significantly, the September 1999 report prepared three months after the accident does not offer any measurements of restricted range of motion of either the cervical or lumbar spine, and simply notes that plaintiff "continues to *complain* of pain and restriction of motion of the cervical and lumbosacral spine" (emphasis added).

We further note that Dr. Melamed completely failed to address defendants' medical evidence attributing the condition of plaintiff's lumbar spine to a preexisting degenerative condition (*see Shinn v Catanzaro*, 1 AD3d 195, 198 [2003]; *Lorthe v Adeyeye*, 306 AD2d 252, 253 [2003]). It is particularly significant that Dr. Melamed made no effort to address the indication in a 1999 MRI report, which had been prepared at his own request, that the L5-S1 disc exhibited "[d]esiccative changes," which, as explained in defendants' MRI report, are consistent with an underlying degenerative condition independent of any trauma.* We also deem it significant that neither Dr. Melamed's 2002 affirmation nor his 1999 report sets forth any "*qualitative* assessment . . . compar[ing] the plaintiff's [alleged] limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002] [emphasis in original]), much less an objective basis for such an assessment, as is also required (*id.*).

Moreover, plaintiff has not furnished a sufficient explanation for the period of 2½ years (from September 1999 to April 2002) during which he admittedly received no treatment for his alleged injuries. The 2002 affirmation of plaintiff's medical expert, Dr. Melamed, states that he terminated plaintiff's treatment when he determined that "further treatment and visits would be only palliative." Aside from the vague and conclusory nature of Dr. Melamed's assertion, his statement that further treatment would be "palliative" in fact acknowledges that a benefit (i.e., palliation of the injuries) would be derived from continuing treatment. This is not an adequate explanation (*cf. Toure*, 98 NY2d at 355 [treatment gap sufficiently explained where evi-

---

* The word "desiccative," which appears in the phrase "[d]esiccative changes" used in the 1999 MRI report that Dr. Melamed ordered, is defined to mean "[d]rying" (Stedman's Medical Dictionary 483 [27th ed]). Since Dr. Melamed does not explain how a traumatic injury could cause a spinal disc to dry out, he has in fact failed to address the MRI report that he ordered.

dence showed that continued treatment would not produce any benefit]).

In sum, plaintiff failed to offer sufficient evidence to raise a triable issue as to whether he met the "serious injury" threshold under Insurance Law § 5102 (d). Accordingly, the motion court's order is affirmed. Concur—Tom, Sullivan and Friedman, JJ.

Nardelli, J.P., and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: I dissent for the following reasons.

In opposition to defendants' motion for summary judgment, plaintiff submitted his own affidavit and an affirmation from Dr. Samuel Melamed, the physician who treated him after the accident and re-examined him in April 2002 for purposes of the motion. Dr. Melamed affirmed that he treated plaintiff after the accident in 1999 and re-examined him in April 2002, when he also reviewed plaintiff's medical records, including his own report dated September 23, 1999, which was annexed to his affirmation. Dr. Melamed noted that the MRI of the 17-year-old plaintiff revealed one herniated and three bulging discs, narrowed neural foramina, and exaggerated lumbar lordosis.

Upon examination of plaintiff, Dr. Melamed found 70 degrees of flexion, noting that 90 degrees is considered normal, and 20 degrees of extension, noting that 30 degrees is considered normal, in the lumbar spine, and 40 degrees of flexion, noting that 45 degrees is considered normal, and 40 degrees of extension, noting that 45 to 50 degrees is considered normal, in the cervical spine. In the positive straight leg raising test, an indicator of nerve irritation, Dr. Melamed found 80 degrees on the right, noting that 90 degrees is considered normal. He observed that these results were consistent with the findings of restricted range of motion of both the lumbar and cervical spines documented in the earlier medical reports.

Dr. Melamed stated that the objective test measurements he obtained upon examination, as well as plaintiff's subjective complaints, corresponded to the injury plaintiff sustained and accounted for plaintiff's pain, stiffness and inability to move his lumbar and cervical spines to the extent characteristic of a normal 20 year old. The physician opined with a reasonable degree of medical certainty that plaintiff's inability to move his lower back and neck in the full normal range for his age was causally related to the accident, would persist and possibly worsen with age and the normal degenerative process attendant thereto, and was therefore permanent.

Dr. Melamed set forth his measurements of plaintiff's range of motion in the lumbar and cervical spines and, for purposes of

comparison, the values considered normal for range of motion in those regions. This numeric expression of plaintiff's loss of range of motion substantiates his claim of serious injury (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]; *see also Lopez v Senatore*, 65 NY2d 1017, 1020 [1985] [evidence of limitation of range of motion sufficient to defeat summary judgment]; *O'Sullivan v Atrium Bus Co.*, 246 AD2d 418, 419 [1998] [medical opinion as to existence and extent of range of motion limitation based on examination and observation sufficient to defeat summary judgment]). Dr. Melamed further attributed plaintiff's pain, stiffness and limitation of range of motion to his injury and opined, on the basis of the objective tests and examination results and plaintiff's continued inability to move his spine normally three years after the accident, that plaintiff's condition was permanent. This evidence is sufficient to defeat defendants' motion for summary judgment (*see Toure, supra* at 353).

As to plaintiff's failure to explain the 2½-year gap in his treatment with Dr. Melamed, the physician explained in his affirmation that he discharged plaintiff with instructions in strengthening and stabilizing exercises to do at home when it became clear, after plaintiff had undergone extensive therapy in the physician's office, that further treatment and visits would be only palliative in nature. The clear import of this explanation is that plaintiff did not need to see the doctor because he could carry out on his own the exercise regimen recommended by the doctor. Such explanation for the "treatment gap" goes to the weight to be given a medical opinion and is properly for a jury (*see e.g. Rosario v Universal Truck & Trailer Serv.*, 2 AD3d 362 [2003]; *Williams v Parke*, 1 AD3d 240 [2003]; *Ramos v Dekhtyar*, 301 AD2d 428, 429 [2003]; *Manrique v Warshaw Woolen Assoc.*, 297 AD2d 519, 520-521 [2002]; *Bitici v New York City Tr. Auth.*, 245 AD2d 157, 157 [1997]; *Cassagnol v Williamsburg Plaza Taxi*, 234 AD2d 208 [1996]).